## Young et al. *v.* Templeton et al.

A marriage settlement, executed in another State, where the property was situated and where the parties resided at the time, if valid by its laws, cannot be effected by the subsequent removal of the parties to this State.

By the laws of Mississippi, no covenant or agreement in consideration of marriage, nor any deed of marriage settlement or deed of trust, though the consideration be a valuable one and the *bonâ fides* of the parties unquestionable, is good against creditors, unless acknowledged by the parties bound thereby, or proved before a judge of the Supreme Court, or a justice of the county court, or justice of the peace, or notary public of the county in which the lands, tenements, and hereditaments, or some part thereof, are situated, and unless a certificate of such acknowledgment or proof, written upon said instrument, and signed by the officer before whom it was made, be lodged with the clerk of the county court of the proper county, to be there recorded in the same manner as other deeds of real or personal estate are required by law to be acknowledged or proved. A marriage settlement, not duly acknowledged or proved, and recorded, is not void merely as to creditors having liens on the property to be affected, but is void as to all creditors whosoever.

On a question arising under the laws of another State, in which the english common law, so far as adapted to our constitutions and consistent with our form of government, and not repealed or modified by statute, is in force, and where the principles of the english equity jurisprudence also prevail, and where the courts are authorized to look to english authorities in equity for rules of decision on questions turning on the principles of equity, the courts of this State will be bound to notice any thing applicable in principle, which it finds laid down in approved works.

In those States in which the common law prevails, a general lien on land resulting from a judgment, constitutes, *per se*, no property or right in the land itself. It confers only a right to levy on the land, to the exclusion of other adverse interests subsequent in date to the judgment, and can only be made effectual by a levy.,

A deed, executed in a State where the english common law prevails, conveying property to a trustee, for the benefit of creditors of the grantor, though fraudulent and void as to creditors, is sufficient to divest the legal title of the grantor, and conclusive against him. And where the property so conveyed in trust for the creditors, is subsequently conveyed by the grantor to a trustee as a marriage settlement, it can only confer on the intended wife, or on her trustee for her benefit, the right to have a conveyance made to her of the property when the prior deed shall have been satisfied or otherwise discharged. It creates in her favor a lien in equity only, of no validity against a creditor until actual notice, or the filing of a bill asserting such lien, which is constructive notice; and where a judgment creditor, who, by reason of the conveyances in trust for the creditors, has but a lien in equity upon the property conveyed, instead of a legal lien, files his bill in equity before any acual or constructive notice of the deed of marriage settlement, his right to subject the property to his debt will take precedence of that of the wife. As the judgment creditor would prevail in Mississippi over the wife, by reason of his earlier assertion of his equitable claim by a bill in equity, the husband cannot, by subsequently removing slaves, who formed a portion of the property to this State, create a right of prioriry in her favor.

APPEAL from the District Court of Carroll, *Selby*, J. *Short* and *Parham*, for the plaintiffs. *Thomas* and *Snyder*, for the defendants. The judgment of the court, (*King*, J. absent,) was pronounced by

Eustis, C. J. This suit is brought on a judgment obtained by the plaintiffs in the State of Mississippi, against *Samuel Templeton* and others. The object of it is to obtain a judgment in this State against *Samuel Templeton*, one of the defendants, and to annul a conveyance of certain slaves made by said *Templeton* to another defendant, *James Wyley*, in trust for *Mrs. Templeton*, in consideration of marriage, and to subject the slaves, twenty-one in number, to the pay-

ment of the plaintiffs' debt.  There was a verdict of a jury in favor of the plain-       YOUNG
tiffs, against *Templeton*, for the amount of his debt, but in favor of the other         TEMPLETON.
defendants *Wyley* and *Mrs. Templeton*, against the plaintiff's ; and judgment
having been rendered accordingly, the plaintiffs have appealed.*    The judgment
having sustained the conveyance under which the slaves were held in trust for the
benefit of *Mrs Templeton*, the principal argument of counsel has been directed to
the question of its validity.

On the 9th of October, 1843, in view of the marriage afterwards contracted,
and in consideration thereof, *Templeton*, the defendant, made a settlement of
these slaves, with other property, through the instrumentality of a trustee, upon
his future wife, selecting *Wyley*, his father-in-law, for the trustee.  The deed
was executed in Madison, in the State of Mississippi, the residence of *Wyley* ;
that of *Templetpn* being in Warren county of that State.  *Templeton* and his
wife, early in December, 1846, removed to the parish of Carroll in this State,
with the slaves, and the instrument above described was there recorded about
that time.

The judgment on which this suit is brought, was rendered in May, 1840, in the.
Circuit Court of Warren county, Mississippi.  If the marriage settlement was
valid against the plaintiffs under the laws of Mississippi, the parties residing there,
and the property upon which it was to operate` be ing also there, it may be as-
sumed that the rights of ownership under it are not affected by the removal of
both to this State.   The validity and effect of the settlement under those laws is,
therefore, to be examined.

It is contended by the counsel for the plaintiffs that, the marriage settlement
never had any legal existence under the laws of Mississippi, as to those who were
creditors of *Templeton* at the time it was executed ; that it was void as to all
·such creditors, whether they had judgments or not, it not having been acknow-
leged, proved, or recorded in the manner required by the statutes of that State
in order to give it effect.

We understand the statute particularly referred to as providing that no cove-
nant or agreement, in consideration of marriage, shall be good against *any credi-
tor*, unless it be acknowledged by the party bound thereby, or proved to be his
act, and lodged with the clerk of the County Court of the proper county, to be there
recorded in the same manner as other deeds of real or personal estate are by law
required to be acknowledged, proved, and recorded.  The next section provides that,
all deeds of settlement of marriage, and all deeds of trust, shall be void as to all
creditors, unless they shall be acknowledged or proved and lodged with the clerk
of the County Court of the proper county, to be recorded according to the direc-
tions of the act.   The directions of the act appear to be that the writing be
acknowledged or proved before a judge of the Supreme Court of the State, or a
justice of the County Court, justice of the peace, or notary public of that county,
in which the lands, tenements, or hereditaments, or some part thereof, are sit-
uated, and that a certificate of such acknowledgment or proof, written upon said ins-
trument and signed by the officer before whom it was made, be lodged with the
clerk of the County Court, to be there recorded.   Statutes of Mississippi, by
Howard & Hutchinson, p. 343.

The only evidence of a compliance with the provisions of this statute by the,
parties to the marriage settlement, is a certificate of the clerk of the Probate
Court of the county of Madison, State of Mississippi, dated on the 25th of Decem-

---

* The defendant *Samuel Templeton*, also appealed.

cember, 1843, to the effect that, the two subscribing witnesses appeared before him, and proved the execution and delivery of the instrument on the day and for the purposes therein mentioned.

In the act of settlement *Templeton* describes himself as of the county of Warren, and conveys to his future wife, twenty-one slaves, together with the plantation upon which he then resided in Warren county, with all the stock, farming utensils, household and kitchen furniture, and other moveables. It is therefore apparent that, the requisites of the statute as to acknowledgment, proof or recording, have not been complied with. Nor does it appear, except as stated, that the instrument ever had effect in the State of Mississippi. It stands then as a private writing, without any act connected with it which would give it any effect as an executed contract.

But it is contended by the counsel for the defendants, that *Mrs. Templeton* must be considered in the same light as a purchaser for a valuable consideration, the law attaching that import to marriage settlements from motives of the soundest policy. *Templeton*, as we have seen, lived in the county of Warren, and his property was there situated. *Mrs. Templeton*, before her marriage, resided in the county of Madison, and it is said she and her father, the trustee, were entirely ignorant of the state of the affairs of *Templeton*. But the answer to this argument is found in the statute itself. Whatever may be the verity of the consideration and the *bonâ fides* of the party to the marriage settlement, to have effect against creditors it must be acknowledged, or proved, and recorded as the statute has provided.

It is also urged that marriage settlements not duly acknowledged, proved and recorded, are void *merely* as to creditors having liens, but, if the lien be lost, such settlements are not void in relation to creditors having no lien on the property to be affected by the settlement.

The term made use of in the statute is general—all creditors without any limitation. If the operation of this statute is only in favor of creditors by judgment, or judgment creditors having liens, it must depend exclusively upon the jurisprudence of that State.

In the case of *Armfield* v. *Armfield*, 1 Freeman's Chancery Reports, 316, the chancellor of Mississippi stated, in giving his opinion, that courts of equity go very far to sustain marriage settlements where they are just and free from the imputation of fraud, and that marriage is held to be a *bonâ fide* consideration, and the wife stands in the light of a *bonâ fide* purchaser, and is entitled to the same protection. He refers to the treatise of Atherby on Marriage Settlements, p. 130, as containing the doctrine that the claim of creditors is never an objection to the execution of marriage articles, unless they were creditors by judgment or other matter of record before the articles were entered into.

That the plaintiffs had a lien on the property in dispute by virtue of their judgment and its enrollment, is conceded in argument; but it is urged that the lien having expired by the effect of the act of the legislature referred to, although the marriage settlement would have been void at the time it was executed as to the plaintiffs, yet by reason of the extinguishment of the lien they are not in a situation to be able to contest the validity of the marriage settlement.

We understand the common law of England, so far as it is adapted to our institutions and is consistent with our form of government and not repealed or modified by statute, to be in force in Mississippi, and that the principles of equity jurisprudence which prevail in England are those which prevail in that State, and

that courts there are authorized to look to english authorities in equity, for rules of decision on questions turning on the principles of equity.

As no adjudged case has been adduced pertinent to the subject and as the true rule in this case which a court of equity in Mississippi would be guided by, rests entirely on doctrine, we are bound to notice what we have found laid down in approved works, and which is applicable in principle to the case under consideration.

It is stated in the treatise of Mr. Sugden on Vendors, a work which has received commendation for its exactness and the learning ability of its author, that although a judgment was not docketed and therefore void against a purchaser, yet, if the purchaser had notice of it and did not pay the value of the estate, it was presumed that he agreed to pay off the judgment, and equity compelled him to pay it; and that the general rule of equity would warrant the assertion that the case would have been the same although no agreement had been made. It had been decided by the master of the rolls that, notice of judgment not docketed was not material, but the case has been overruled, and Lord Eldon decided in favor of the purchaser being bound by notice of the judgment creditor, though the judgment was not docketed, and carried with it no lien. C. 12, § 20. This was the doctrine in England, on the subject previous to the act of 1 and 2 Vict. c. 110. Vide Coote on Mortgages, 71.

By the act of the legislature of Mississippi, before referred to, the liens created by judgments obtained previous to its passage were limited to two years. The plaintiff's judgment was duly enrolled before the date of the marriage settlement, and under this law would have expired pending the litigation between the plaintiffs and *Joseph Templeton et al.*, which had for its object to subject the property of *Samuel Templeton*, covered by a deed of trust, to the payment of their judgment, which we will afterwards notice.

It is not understood that a general lien by judgment on lands, constitutes, in law, *per se*, a property or right in the land itself. It only confers a right to levy on the same, to the exclusion of other adverse interests subsequent to the judgment, and can only be made effectual by that means. *Conrad v. Atlantic Insurance Company*, 1 Peters' Rep. p. 443.

The marriage settlement never having been recorded in Mississippi, and there being no pretence for any notice of it to the plaintiffs, it is very difficult to perceive on what ground it could have been held valid against a levy on the property by an execution of the plaintiffs. Here this levy was prevented by the conveyance of the legal estate in the property under the deed of trust to *Joseph Templeton*, which the plaintiffs have been attempting to set aside. This deed having been recorded in the proper county, and the judgment having been enrolled there, it seems to us obvious, that it fixes the notice of both upon the trustee as well as the party in interest, and disclosed fully the rights of plaintiffs under their judgment, and the desperate condition of *Templeton's* affairs. The transfer of his homestead, furniture, and slaves, could imply nothing else, and we do not understand how, by going out of his county and contracting with a person there, the latter could be held ignorant of, or relieved against, those incumbrances. Under our laws a marriage settlement of this character, adversely to creditors, would have no effect, and we are not able to understand on what ground it can be sustained on the principles of equity recognized in England and in Mississippi. The very case we before noted, that of *Armfield*, appears to be conclusive against the defendants; the settlement under those circumstances is, in no sense, just, nor is it free from the imputation of fraud.

33

YOUNG
v.
TEMPLETON.

It is necessary to ascertain what estate or property the trustee, *Wyley*, acquired in the property conveyed to him by the marriage settlement. The argument of the defendants' counsel has given the answer to this inquiry. He states that, at the time of the recovery and enrollment of the plaintiffs' judgment in Mississippi, the *title* was in *Joseph Templeton* under the deed of trust. This deed was offered in evidence, and the plaintiffs' bill in chancery and the proceedings had, show that the litigation for the purpose of annulling it, is still pending in Mississippi. A statement of these matters becomes necessary in order to explain the title in *Joseph Templeton*, as asserted by the counsel.

The appellants, *Young, Smith & Co.* first instituted suit in the Circuit Court of Warren county, Mississippi, on the 3d of October, 1838, against *Samuel Templeton et al.*, in which the judgment was obtained which constitutes the foundation of the present action. The writ in that suit, was executed on *Templeton* on the 15th of October, 1838. At the November term, *Templeton* put in a demurrer to the declaration, and the case was continued until the next term, which was to come on the 20th of May, 1839. On the 9th of May, 1839, he made a transfer of all his property, consisting of about nine hundred and sixty acres of land in Warren county, Mississippi, with about fifty negroes, together with all his stock, growing crops, and every thing, down to the household furniture, to his brother, *Joseph Templeton*. The deed was put on record in Warren county, on the 15th July, 1839. On the 1st of May, 1840, the appellants obtained their judgment in the Circuit Court of Warren county, against *Samuel Templeton, Isaac N. Glidwell, Thomas M. Green* and *John Gowan*, for the sum of $11, 472 66, and costs of suit. Execution having issued on this judgment and been returned "*nulla bona*," the sheriff having made no levy on the property of *Samuel Templeton*, it having been thus conveyed to *Joseph Templeton*, no further proceedings appear to have been taken by the appellants until the 20th of March, 1844. They then filed their bill for the purpose of annulling the deed of trust from *Samuel* to *Joseph Templeton*, made on the 9th of May, 1839, on the ground that it was made to hinder, delay, and defraud the creditors. All the parties who were supposed to claim any rights under the deed of trust were made parties to the suit. All were called on to set forth the amount of the debts which they claimed as secured by the deed of trust. The bill directly charged that no such debts existed, or that, if they ever did exist, they had been paid off by *Samuel Templeton*, and that the deed of trust was held up as a shield in fraud of the rights of the complainants. Neither the creditors, nor *Joseph Templeton* ever answered the bill. Judgment *pro confesso* was entered against them and all the other defendants. On the 12th of June, 1845, on motion of *Samel Templeton*, the *pro confesso* judgment was set aside as to him, and he had leave to file his answer. The only portion of this answer we deem it necessary to notice is, that *Templeton* admits that from the execution of the deed of trust in 1839, he had been in possession of the property conveyed in the deed, and in the receipt of the proceeds; and that no steps were ever taken by the trustee, or the creditors mentioned in the trust deed, to apply the property conveyed to the objects of the trust. After *Samuel Templeton* had filed his answer other parties were added to the suit who claimed rights superior to those asserted by the complainants, under certain judgments they held against *Samuel Templeton*, and, pending these proceedings, in November, 1846, as we have seen, *Templeton* removes to Louisiana with his household, slaves, and moveables.

The marriage contract was put on record in the parish of Carroll, on the 5th of December, 1846. This instrument purports to have been executed in the

county of Madison, in the State of Mississippi, on the 9th of October, 1843. By it *Samuel Templeton*, in consideration of the marriage intended to be shortly had between him and *Martha E. Wyley*, and in case the said marriage should take place, conveys to *James Wyley*, in trust for the benefit of his intended wife, a large amount of property. The property conveyed in the marriage contract consists of twenty-one of the same negroes that were conveyed in the deed of trust to *Joseph Templeton*; also all the household and kitchen furniture, stock of hogs, cattle, sheep, horses and other beasts, wagons and farming utensils, together with a "fine four-wheeled carriage and harness and a piano forte"; and also a tract of land, the plantation on which *Samuel Templeton* then lived, section twenty-six. The land is the same that was conveyed in the deed of trust to *Joseph Templeton*. This marriage settlement never was recorded, either in Madison county, where it was executed, or in Warren county, where the property is situated.

To return then to the inquiry as to the title of the trustee, *Wyley*, or that of the wife of the debtor, *Samuel Templeton*, in the slaves, which are the subject of this suit: *Templeton*, the defendant, having, by his deed of the 9th May, 1839, conveyed his whole legal estate in the slaves, with the other property, to his brother for the benefit of his creditors, it is clear that he had no legal title remaining in him which he could convey in the marriage settlement. The deed to his brother, whether fraudulent as to creditors or not, was valid between the parties, and was of ample force at common law to vest the legal title to the slaves in *Joseph Templeton*, and the deed from *Samuel Templeton* to *Wyley*, in October, 1843, conveyed no legal title in this property. It gave to the intended wife, or her trustee, for her benefit, the right to have a conveyance made to her of the property when the prior deed should be satisfied by the payment of the debts, or otherwise discharged.

It created in her favor a lien in equity only, which is of no validity against a creditor until, either actual notice, or the filing of a bill asserting such lien, which is constructive notice. Had the marriage settlement been recorded under the laws of Mississippi at its date, (9th October, 1843,) such recording would have fixed the date of this equitable lien on all others claiming also liens in equity upon the property. But before it was recorded, and while concealed strangely by the trustee, a judgment creditor, who, by reason of the deed to *Joseph Templeton*, has but a lien in equity upon the property instead of a legal lien, files his bill in equity on the 20th March, 1844, and asserts his lien in equity. In such a case we understand the rule to be, *qui prior in tempore, potior in jure est.* The right of the judgment creditor to subject this property to his lien in equity must date from the filing of his bill, and that of the wife, from the first publication of her equitable claim in the parish of Carroll, in 1846.

We have looked in vain for any distinct act of delivery, or of possession, of the slaves on the part of the trustee, and can find no evidence of any such act; nor is there any possession on the part of the wife, except that which is left to the inferred from the conjugal relations. *Templeton*, the defendant, considered them in his possession, in 1845, and he made oath to the fact in his answer to the appellant's bill in chancery.

We consider the possession to have been unchanged since the first deed to *Joseph Templeton*, and to have remained unchanged in *Samuel Templeton*.

The removal of the slaves to this State was made *pendente lite*, after the notice of the claim in equity of the appellants as judgment creditors, and before an

Young
v-
Templeton.

appearance of the marriage settlement, which is now set up to defeat it. From the best consideration which we have been able to give to this difficult question, we believe that, in a court of equity in Mississippi, the judgment creditor would prevail, for the reason that he was the earliest to assert his equitable claim by the filing of his bill over the wife's equitable title which her trustee had neglected to assert and publish. If she could not have secured her priority in Mississippi, we cannot permit the husband, by removing the subject of the litigation to this State, to create a right of priority in her favor.

In this view of the case it is not necesssary to consider whether the 13th section of the stat. of 24 February, 1844, of the State of Mississippi, by which the lien of preceding judgments was to cease in two years, is or is not in conflict with the constitution of the United States. If the law is held to operate upon any other than liens at law, we think it is sufficient to say that, the lien in this case, which we have called a lien in equity, was put into execution within the two years required, to wit, in March following its passage. The proceeding was against the property in the possession of *Samuel Templeton*, and, until we find it decided by the courts of Mississippi that, the lien is lost both in law and equity, by the effect of the statute, while it is in litigation, under a state of facts as presented in this case, we must give the parties before us the benefit of our own convictions.

It is contended that the deed of trust from *Samuel Templeton* to *Joseph Templeton*, presents an obstacle to the application of the slaves to the satisfaction of the judgment of the plaintiffs. We think not. A court of equity in Mississippi, would not hesitate in decreeing the nullity of that deed. The retention of an interest in the grantor, the possession which he retains, with the revenues, and the fact that no time is to be discovered from its tenor, within which it is to be executed, are objections fatal to its validity. We conclude, therefore, that the plaintiffs are entitled to the relief they ask.

It is, therefore, decreed that, the judgment in favor of the plaintiffs against *Samuel Templeton* stand affirmed, that the judgment in favor of *Martha E. Templeton* and the said *James W. Wyley* be reversed, and that the conveyance from the said *Samuel Templeton* to the said *James W. Wyley*, for the use of *Martha E. Wyley*, of date of the 9th of October, 1843, so far as the same relates to the slaves mentioned therein and described in the plaintiffs' petition, be declared to be null, void, and of no effect, and that said slaves be subjected to the payment of the said plaintiff's debt, with interest and costs; and that the appellees pay the costs of this appeal.