(July 15, 1912.)

## THOMAS J. DOUGLAS, Appellant, v. MARY E. DOUGLAS et al., Respondents.

[125 Pac. 796.]

Separate Property of Husband Under Laws of Foreign State—Community Property Under Laws of Idaho—Investment of Separate Property—Administration of Estate—Probate Proceedings as Estoppel.

(Syllabus by the court.)

1. Under the statute of this state, sec. 2679, Rev. Codes, "all property owned by the husband before marriage, and that acquired by gift, bequest, devise or descent is his separate property," and under sec. 3060, Rev. Codes, "Community property is property acquired by husband and wife, or either, during marriage, when not acquired as the separate property of either."

2. Under the community property laws of this state, whenever, after marriage, the husband purchases real estate within this state, a *prima facie* presumption arises that such property is community property, and such presumption may be overcome by the husband assuming the affirmative and burden of proof and showing as a

matter of fact that such property was purchased with his separate property or estate.

3. Personal property acquired during coverture is governed and controlled by the law of the matrimonial domicile, and if the title thereto and property therein was vested in the husband under the law of the domicile, it will be presumed everywhere to be his property, and the same is true of any property that was the separate and individual property of the wife under the law of the matrimonial domicile.

4. Where husband and wife during coverture accumulated property in a state where the community law did not exist and where property accumulated and acquired during coverture vests absolutely in the husband, and such property or the proceeds thereof is brought into the state of Idaho and here invested in real property, the property so acquired will be the separate property of the husband.

5. Where no proof is shown to the contrary, the presumption arises in the courts of this state that the community property law prevails in a sister state, the same as it prevails in this state.

6. In inquiring into and ascertaining the law of a sister state with reference to the title and ownership of property acquired by husband and wife in that state during coverture, the courts of this state do not make such inquiry and investigation for the purpose of executing a foreign law within this state, but rather to ascertain the status of the foreign law as a probative fact in ascertaining and establishing the title and ownership of such property at the time it is brought into this state.

7. A probate court has no jurisdiction or authority in the administration of an estate of a decedent to order or confirm the sale of real estate which belongs to someone else, and the title to which is vested in another and which property did not in fact or law belong to the estate being administered.

APPEAL from the District Court of the Fourth Judicial District for Twin Falls County. Hon. C. O. Stockslager, Judge.

An action to quiet title. Judgment for defendant, and plaintiff appealed. *Reversed.*

James H. Wise, for Appellant.

There being no dispute as to the marriage taking place in Colorado at the time alleged, or as to the property being

earned during the life of the marriage contract, or that the wife, during the marriage contract, performed her usual household duties during the acquiring of said property in Colorado, it would naturally appear that the status of the property was permanently fixed in Colorado and was separate property of the plaintiff in Colorado. (*Schuler v. Henry,* 42 Colo. 367, 94 Pac. 360, 14 L. R. A., N. S., 1009; *Denver & R. G. Ry. Co. v. Young,* 30 Colo. 349, 70 Pac. 688.) .

The husband's ownership of real, personal and mixed property in Colorado will not be divested by his removal to Idaho, where the community property law exists. (*Kraemer v. Kraemer,* 52 Cal. 302; *George v. Ramson,* 15 Cal. 322, 76 Am. Dec. 499; *Ramsdell v. Fuller,* 28 Cal. 37, 87 Am. Dec. 103; *In re Burrows' Estate,* 136 Cal. 113, 68 Pac. 488; *Brookman v. Durkee,* 46 Wash. 578, 123 Am. St. 944, 90 Pac. 914, 12 L. R. A., N. S., 921, 13 Ann. Cas. 839; *Bond v. Cummings,* 70 Me. 125; *Lichtenberger v. Graham,* 50 Ind. 288; *Mason v. Fuller,* 36 Conn. 160; *Jaffrey v. McGough,* 83 Ala. 202, 3 So. 594; *Thorn v. Weatherly,* 50 Ark. 237, 7 S. W. 33; *Dye v. Dye,* 11 Cal. 163; *Tinkler v. Cox,* 68 Ill. 119; *Smith v. Peterson,* 63 Ind. 243; *Hayden v. Nutt,* 4 La. Ann. 65; *Henderson v. Trousdale,* 10 La. Ann. 548; *Stokes v. Macken,* 62 Barb. (N. Y.) 145; *Lyon v. Knott,* 26 Miss. 548; *Cade v. Davis,* 96 N. C. 139, 2 S. E. 225; *Cressey v. Tatom,* 9 Or. 451; *Vardeman v. Lawson,* 17 Tex. 10.)

As it now stands, the property described in plaintiff's complaint is not inventoried in the probate court, nor has the probate court any jurisdiction over the property described in the plaintiff's complaint. (Ross on Probate Law, p. 420.)

The adjudication of the probate court or the recitals of the inventory are not conclusive in another forum of the decedent's ownership either as against a third person or against the executor or administrator. (*Estate of Rathgab,* 125 Cal. 302, 57 Pac. 1010; *Lammex v. Dodson,* 4 Mont. 560, 2 Pac. 298; *Estate of Bolander,* 38 Or. 493, 63 Pac. 689; *Estate of Belt,* 29. Wash. 535, 92 Am. St. 916, 70 Pac. 74.)

The laws of the sister state must be proved as facts or the court will not take judicial notice of them. (*Hanley v.*

*Donoghue,* 116 U. S. 1, 6 Sup. Ct. 242, 29 L. ed. 535; *Atchison, Topeka & Santa Fe R. Co. v. Betts,* 10 Colo. 431, 15 Pac. 821; *Washburn Crosby Co. v. Boston & A. R. R. Co.,* 180 Mass. 252, 62 N. E. 590; *Crandall v. Great Northern R. Co.,* 83 Minn. 190, 85 Am. St. 458, 86 N. W. 10; *Musser v. Stauffer,* 178 Pa. 99, 35 Atl. 709; *Coghlin v. S. C. R. Co.,* 142 U. S. 101, 12 Sup. Ct. 150, 35 L. ed. 951; *Shannon v. Wolf,* 173 Ill. 253, 50 N. E. 682; 5 Ency. Ev. 808; Jones on Evidence, p. 129, sec. 118; *Eastern Building & Loan Assn. v. Williamson,* 189 U. S. 122, 23 Sup. Ct. 527, 47 L. ed. 735.)

Longley & Hazel, for Respondents.

The community property laws of this state step into the place of the law of devolution of Colorado, and more particularly sec. 3011 of the Colorado statutes, which makes express provision for the wife, and says that the husband may not cut off the wife by the execution of the will, as she has the option to take under any will which may be executed, or, in lieu thereof, one-half of the entire estate, both real and personal. (*Hanna v. Palmer,* 6 Colo. 160, 45 Am. Rep. 524.)

Distributions of the estates of decedents are governed by the laws of the state where the estate is situated. (Wharton's Conflict of Laws, secs. 560, 561; Story on Conflict of Laws, secs. 480–484; Brock's Administrator, 51 Ala. 85; *Saul v. His Creditors,* 5 Mart., N. S. (La.) 569, 16 Am. Dec. 212.)

The law of every civilized state aims to preserve essential rights vested under foreign laws, but the owner cannot bring with him to the new situs the laws of the place of acquisition. (McKay, Com. Prop., sec. 526.)

The probate court, having made an order final and conclusive in its nature, and having vested some third person with the title to the property here involved, it is not within the province of this court to consider or disturb such order except upon appeal as by the statutes of the state provided. (*Clark v. Rossier,* 10 Ida. 348, 78 Pac. 358, 3 Ann. Cas. 231.)

AILSHIE, J.—On about the 12th day of May, 1897, the appellant, Thomas J. Douglas, was a resident of Otero county,

Colo., and there intermarried with Margaret V. Douglas, and thereafter the two continued to live together as husband and wife in the state of Colorado until the 25th day of February, 1908, on which date they removed from Colorado to Idaho. Between the date of their marriage and their removal to Idaho, and while they were husband and wife, they acquired and accumulated real, personal and mixed property which amounted to the sum of $13,050 at the time of their departure for Idaho. During this time they were engaged in the farming business, the wife discharging the usual and ordinary household duties and the husband conducting the farming business. The wife had no separate property of any kind or character recognized as such under the laws of Colorado Upon arriving at Twin Falls, Idaho, the husband invested this money in real estate. They continued to live in Idaho until the time of the death of Margaret V. Douglas, the wife of the appellant, which occurred on the 25th day of October, 1909. She left surviving her her husband and her minor children, Mary E. Douglas, Robert M. Douglas and Kenneth Douglas. Administration was had on the estate of Margaret V. Douglas, and among other things, the inventory returned one-half of this real estate as community property and subject to administration under the laws of Idaho. The administration proceeded on the theory that this was community property and an order was subsequently made for the sale of this property and a sale was made. Thereafter the husband, Thomas J. Douglas, concluded that this was not community property but his separate property, and he was thereupon suspended as administrator of the estate and a special administrator was appointed, and appellant thereupon made a motion to have this property stricken from the inventory on the ground that it was not community property but his separate property. This motion was sustained by the probate court. Thereafter the appellant instituted this action for the purpose of quieting his title to the whole of the property on the ground that it was his separate estate.

We are called upon in this case to determine whether the property purchased by the appellant on his arrival here from

Colorado became his separate property or the community property of himself and his wife. Under the provisions of sec. 2679, Rev. Codes, ''All property owned by the husband before marriage, and that acquired by gift, bequest, or devise or descent is his separate property''; and sec. 2680 defines the status of all property acquired after marriage by either husband or wife, and sec. 3060 defines community property as follows: ''Community property is property acquired by husband and wife or either, during marriage, when not acquired as the separate property of either.''

It will be observed from the foregoing provisions of the statute that the community property law prevails in this state, and it will therefore afford us very little light or information to examine or review authorities coming from states where the common-law rule prevails with reference to the property relations between husband and wife. It seems to be conceded by counsel on both sides of this case that the community property law does not prevail in Colorado, and did not prevail at the time that appellant and his wife acquired this property and departed from the state. Upon the trial of the case the appellant offered to introduce a part of the dissenting opinion in *Schuler v. Henry,* a Colorado case reported in 42 Colo. 367, 94 Pac. 360, 14 L. R. A., N. S., 1009, which quotes with approval from *Denver & R. G. R. Co. v. Young,* 30 Colo. 349, 70 Pac. 688, to the effect that the wife acquires no right or interest in any property accumulated by her labor and services in the performance of the usual and ordinary household duties, and that such services belong to the husband. We shall not go into this question, however, because it is conceded that the property accumulated in Colorado by appellant and his wife was the separate property of the appellant there.

Various principles of the law are discussed by respective counsel pro and con as bearing upon this question. It is urged, for instance, that the marital relation in Colorado amounted to a contract and that this property was acquired under that contract, and that to allow the wife an interest in the property in this state would be a violation of the contract

entered into in another state. On the other hand, it is contended that under the law of Idaho the accumulations of the husband and wife after marriage is community property in which the two spouses are equally interested, and that to inquire into the laws of Colorado which vest the absolute title in the husband and enforce such law in Idaho is contrary to all legal principles, in that it amounts to executing a foreign law within our own jurisdiction. It is not perceived that either of these contentions is well founded in this case, for reasons which we will hereafter give. It is a well-established rule that personal property acquired during coverture is governed and controlled by the law of marital domicile. This seems to be based upon the theory that movables have no situs, or rather that they accompany the person everywhere. (*Kraemer v. Kraemer,* 52 Cal. 305; note to *Rush v. Landers,* 57 L. R. A. 353; note to *Brookman v. Durkee,* 12 L. R. A., N. S., 921.) On the other hand, real property is governed by the law of its situs. (*Rush v. Landers,* 107 La. 549, 32 So. 95, 57 L. R. A. 353, and note.)

Then we have this situation: That real property is purchased in this state by a married man and during the existence and continuance of the marital relation. The *prima facie* presumption at once arises under our statute that this property was community property. The man who purchased it, however, and on whom the burden of showing that it is not community property rests, resists and contests the claim that such property is community property, and in doing so, shows that it was purchased wholly with personal property which was at the time his separate and individual estate. In doing so, he finds it necessary to prove the laws of the state in which he accumulated this personal property and from which he brought it in order to show that it was his separate and individual estate and that his wife, the other member of the community, had no interest in such property. It is not, therefore, a question of enforcing and executing a foreign law in this state, but it is merely a question of ascertaining what the foreign law was as one of the probative facts in establishing the ownership of the property.

We start in to the investigation in Idaho confronted with
the statute which says that all property acquired by husband
and wife, or either, during marriage, when not acquired as
separate property of either, is community property, and the
presumption, in the first instance, is that the laws of Colorado
are the same as the laws of this state. (*Maloney v. Winston
Bros. Co.*, 18 Ida. 757, 111 Pac. 1080.) This presumption,
however, is subject to be rebutted by competent proof. The
appellant succeeds in this proof by showing that there was
no community property law in Colorado when he accumulated
this property, and that such accumulations were the sole and
separate property of the husband under those laws. By this
means, the title and ownership to this property is fully and
clearly established, and we find that when appellant departed
from the state of Colorado with this property, it was his
separate property, and of course the mere crossing the state
line into Idaho could not divest him of his title or vest that
title in someone else. It would take something more than the
mere crossing of the state line to transfer the title to property
he had with him. He shows, then, that he immediately in-
vested that money in this particular real estate in Idaho.
The mere fact of investing this money could not of itself
change the title or transfer the right of property from him to
someone else. This is merely an exchange of one class of
property for another, and it is well settled that investing one
kind or class or specie of property in another kind or class
does not change the character of the title or right of owner-
ship, and that the title by which the property was held and
governed will continue the same. (*Thayer v. Clarke* (Tex. Civ.
App.), 77 S. W. 1050.) Such property, therefore, as the real
estate here involved, purchased in the manner this was pur-
chased, with the separate property of the husband, does not
fall within the class of "property acquired after marriage"
referred to and defined in sec. 2680, *supra.*

This question has been considered by a number of courts
where the community law prevails. *Kraemer v. Kraemer*, 52
Cal. 302, is a case where the husband and wife had accumu-
lated property in Illinois which, under the laws of Illinois,

became the separate property of the husband, and had removed to California, and the husband had invested it in real estate in the latter state, where the community property law prevails and under which the wife was entitled to one-half interest therein. The court held that the mere act of investing the husband's separate property accumulated in the state of Illinois in property in the state of California did not change the nature of the ownership or of the title by which the property was held, and that it would still remain the separate property of the husband. The syllabus to that case says: "If husband and wife acquire personal property in one state and then remove to another state with same, the law of the state where they lived when the property was acquired governs as to whether it is separate or community." This case was cited with approval in *Shumway v. Leakey,* 67 Cal. 458, 8 Pac. 12. It was again cited, approved and followed in *Estate of Burrows,* 136 Cal. 113, 68 Pac. 488. In the Burrows case, a marriage took place in the state of Kansas and the parties there accumulated considerable property. The state of Kansas, however, had no community property law, and in that state the husband is the absolute owner of all property acquired and accumulated during coverture. The parties moved to California and there the property was invested, and the court held that the property acquired in California was held by the same title and ownership as that with which it was purchased. The court said: "All he had in Kansas belonged to him and was his separate property when he arrived in California, no matter whether it was acquired in Kansas before or after marriage. . . . . He started from Kansas with money which was wholly his; I fail to see how the ownership was or could be changed by its removal here."

The community property law prevails in Texas, and in *Blethen v. Bonner,* 30 Tex. Civ. App. 585, 71 S. W. 290, the supreme court had under consideration a similar question where property had been accumulated by husband and wife in Massachusetts where the community property law does not prevail. The husband thereafter removed to Texas and invested the money in property in the latter state. The ques-

tion arose as to whether under the community laws of Texas the wife acquired a community interest in the property. The court, among other things, said: "Lands in Texas, purchased by a married man, after moving there, with money which he earned in another state while a citizen thereof, under the laws of which the money was his separate property, are not community property." The court in that case was presented with the same proposition that is presented here, namely, that they were called upon to enforce the laws of a sister state within the borders of Texas. The court answered that question as follows:

"It is suggested that this view involves the enforcement of the laws of a sister state by a Texas court in the disposition of property here situated. But not so. We have merely ascertained the law of Massachusetts as a fact in determining the quality or extent of the title to money acquired in Massachusetts by a citizen or citizens of that state, and thereafter brought into and invested in this state. It may seem that Massachusetts, the boasted center of advanced thought, should long since have discarded the rule invoked in behalf of L. B. Blethen, and relegated it to its place among the rejected barbarisms of the common law. But, whatever may be our opposition to the common law in this particular, and the extent of our admiration for the rule of the civil law, so firmly embedded in the hearts and jurisprudence of the Texas people, that the fruits of the joint effort of husband and wife shall be shared equally between them, the power of the people of Massachusetts to determine for themselves the conditions upon which her citizens may acquire and hold property within her own borders must be conceded, and we have no power to alter the status of property fixed and vested by such laws before its introduction into this state. We have simply determined the character of L. B. Blethen's title to the money with which the lands in controversy were purchased as a fact, and applied thereto the law of Texas."

The Blethen case was followed and approved by the court of civil appeals of Texas in *Thayer v. Clarke* (Tex. Civ. App.), 77 S. W. 1050.

A somewhat similar principle of law was enunciated by the supreme court of Louisiana in *Young v. Templeton,* 4 La. Ann. 254, 50 Am. Dec. 563, where the civil law prevails, in the state of Washington, and in *Brookman v. Durkee,* 46 Wash. 578, 123 Am. St. 944, 90 Pac. 914, 12 L. R. A., N. S., 921, 13 Ann. Cas. 839, the supreme court of that state held that "where money acquired in the course of trade in another state is the separate property of the husband there, it will continue to be his property when brought into this state, as will property purchased here with it, whether real or personal, notwithstanding Ballinger's Ann. Codes & St., sec. 4490, providing that property acquired by a husband after marriage, otherwise than by gift, bequest, devise, or descent, is community property, since a contrary construction would destroy vested rights." To the same effect see *Elliott v. Hawley,* 34 Wash. 585, 101 Am. St. 1116, 76 Pac. 93. The Brookman-Durkee case has been cited with approval in *Colpe v. Lindblom,* 57 Wash. 106, 106 Pac. 637, and *Alaska Banking & Safe Deposit Co. v. Noyes,* 64 Wash. 672, 117 Pac. 492.

It has been further argued in this case that after an order of sale by the probate court had been made of this property on the theory that it was community property and the sale had been made and confirmed, the judgment became *res adjudicata* under the authority of *Clark v. Rossier,* 10 Ida. 348, 78 Pac. 358, 3 Ann. Cas. 231, and that an action will not thereafter lie in the district court questioning the title conveyed under the probate sale. As was said by this court in *Miller v. Mitcham,* 21 Ida. 741, 123 Pac. 941, "probate courts have exclusive, original jurisdiction in the settlement of estates of deceased persons, and it is within the jurisdiction of those courts to determine who are the heirs of a deceased person and who is entitled to succeed to the estate and their respective shares and interests therein. The decrees of probate courts are conclusive in such matters. A probate court, however, does not have jurisdiction to determine adverse claims or an adverse title to real estate, except in so far as such questions arise between the heirs or devisees of an estate and are necessary to be determined in the administration of the

estate.'' In other words, a probate court has no authority
in the administration of an estate to order and confirm the sale
of real estate which belongs to someone else and which did not
in fact or law belong to the estate being administered. A
decree in such a case could not, and would not, be conclusive
or *res adjudicata* against the owner of such property unless he
became a party to the proceeding and participated in the liti-
gation and allowed the judgment to become final under the
statute. In such case he might be estopped raising the same
question.

In this case it does not appear that appellant is urging his
rights to the detriment of anyone who relied upon the probate
proceeding, or that the question here involved was litigated or
attempted to be litigated in that proceeding. It is true that
it was assumed that this was community property at the time
of the administration, but no one acquired any right or inter-
est under the probate proceedings which will be adversely
affected by this decree so far as appears from the record. We
conclude, therefore, that the probate proceedings are not a bar
to this action, nor do they estop the appellant here from assert-
ing his rights.

The judgment should be reversed, and it is so ordered, and
the cause is remanded with direction to take further proceed-
ings in accordance with the views herein expressed. Costs
awarded in favor of appellant.

Stewart, C. J., and Sullivan, J., concur.