[No. 4157.    Decided April 11, 1902.]

HELEN N. PEYTON, *Appellant,* v. ISAAC N. PEYTON,

*Respondent.*

JUDGMENTS — COLLATERAL    ATTACK — JURISDICTION — RECITALS    OF
    DECREE.

A judgment cannot be collaterally attacked on the ground of
want of jurisdiction over the person of the defendant, where the
court had jurisdiction of the subject matter, and its decree, as
well as tne recitals of the court records, adjudged that jurisdic-
tion of the person had been properly acquired.

SAME — FRAUD IN PROCUREMENT.

The fact that a judgment was procured by fraud cannot be
shown in any collateral proceeding by a party to the record in
the action wherein such judgment was rendered.

SAME — COLLATERAL ATTACK ON DIVORCE DECREE — ACTION FOR SEP-
    ARATE MAINTENANCE.

An action is a collateral attack upon a decree of divorce,
when its purpose is not simply to annul such decree, but its
primary object is to secure separate maintenance or an inter-
est in the property of the former spouse, and, as a mere inci-
dent thereto, it is sought to have the original judgment declared
of no effect (WHITE, J., dissents).

SAME — VACATION — LIMITATIONS.

An action for the vacation of a judgment, based upon fraud
practiced by the prevailing party, when not brought within one
year after rendition, as required by Bal. Code, §§ 5153, 5156,
may be maintained by suit in equity, where not discovered until
the expiration of the right to resort to the statutory remedy, in
which case the action is barred, if not brought within three
years after discovery, under Bal. Code, § 4800, which provides
that an action for relief upon the ground of fraud must be
brought within three years, but the cause of action shall not
be deemed to have accrued until the discovery by the aggrieved
party of the facts constituting the fraud.

SAME — RES JUDICATA.

An order dismissing a petition to vacate a judgment is final
and appealable, and hence *res judicata* of the matters set up
in the petition.

DIVORCE — VACATION OF DECREE FOR FRAUD — ESTOPPEL.

Where a former wife had knowledge for thirteen years of a decree of divorce obtained by her husband, and of his marriage with another, who was continually recognized as his wife and by whom he had children, and had brought an action upon first discovering the divorce for an adjustment of property rights between them from their marriage until their divorce, she is estopped to maintain that she did not discover the fraud practiced in obtaining the divorce until six months prior to action by her for separate maintenance, since she had the means of discovery of the fraud for a period of thirteen years, and might, by the exercise of reasonable diligence, have sooner discovered it.

Appeal from Superior Court, Spokane County.—Hon. WILLIAM E. RICHARDSON, Judge. Affirmed.

*Robertson, Miller & Rosenhaupt, H. P. Bennett, Jr.,* and *Barnes & Latimer,* for appellant.

*Graves & Graves* and *Forster & Wakefield,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—Appellant and respondent were married in Illinois in the year 1869. They began life together as husband and wife in Danville, Illinois, where they resided for about two years after their marriage. They then removed to Kansas, where they remained for a short time, and later went to Colorado, where they continued to reside until 1878. During the latter year respondent closed out his affairs in Colorado preparatory to seeking a location elsewhere. It was arranged that appellant should return to Illinois on a visit, where, as she understood, she was to remain until respondent should select a new location, and that she would then go to the place so selected by her husband. On her trip from Colorado to Illinois, appellant was accompanied by her husband as

far as the city of St. Louis, at which place they separated;
the appellant proceeding on her journey, and the respond-
ent remaining for a few days in St. Louis. They did not
meet again until the year 1886. A few days after their
separation in St. Louis, appellant received a letter from
her husband written at the latter place, and not long after
another written from New York City. The last mentioned
letter was written in November, 1878, and appellant did
not again receive a letter from him for more than three
years. Appellant was visiting friends at Cham-
paign, Illinois, immediately following her trip aforesaid;
and the day before Christmas, 1878, she received a letter
from respondent's brother, who resided at Danville, Il-
linois, in which he informed her that her husband had left
her with the intention of not living with her again as her
husband. In due time appellant returned to Colorado, and
resided in the city of Denver. After the lapse of some
three years as aforesaid, she occasionally received letters
from respondent, which were forwarded to her by respond-
ent's brother, but which did not disclose the whereabouts
of respondent.

Meantime respondent had come to the then territory of
Washington, and had located in Spokane county. He en-
gaged in mercantile and other business, and was known in
business and social circles as "G. H. Morgan." He was
generally recognized in the community as an unmarried
man, and was supposed to be a bachelor. He continued
to do business in Spokane county, and had acquired some
farm property, and also some real estate in what was then
Spokane Falls. In 1885 he was living in the city of Spo-
kane Falls, now Spokane. During that year he caused
to be instituted against appellant a suit for divorce. The
suit was brought in the name of Isaac N. Peyton, as plain-

tiff, in the district court for the fourth judicial district
of Washington Territory, holding terms at Goldendale, in
Klickitat county. Such proceedings were had in said cause
that on the 17th day of October, 1885, a decree was en-
tered therein which declared the marriage relation between
appellant and respondent dissolved. The Hon. George
Turner was the presiding judge of the said court, by whom
the decree was entered. Judge Turner resided in Spokane
at the time, and personally knew the plaintiff in that case,
—the respondent here,—but knew him as G. H. Morgan,
commonly called "Colonel Morgan," and did not know him
as Isaac N. Peyton. Respondent at no time appeared be-
fore the said judge during the pendency of said cause. A
default order was entered against appellant upon the mo-
tion of respondent's counsel, and by the same order Carroll
B. Graves, a member of the bar, was appointed as referee
to take the testimony, make findings of facts and con-
clusions of law, and report the same to the court. Re-
spondent, together with other witnesses, appeared and tes-
tified before the referee, but respondent was not known to
the referee as being the same person known as G. H. Mor-
gan in Spokane. The referee reported the testimony in
writing to the court, together with his findings and con-
clusions, to the effect that the allegations of the com-
plaint were sustained, and that the respondent was en-
titled to a decree of divorce. Thereafter the court con-
firmed said findings and conclusions, and entered a de-
cree as aforesaid. Respondent's attorneys in the divorce
suit were Griffitts & Graves, of Spokane. The case was
managed exclusively by Mr. Griffitts, of that firm. F. H.
Graves, a member of the firm, knew that an action was
pending in Klickitat county, entitled "Isaac N. Peyton
v. Helen M. Peyton," and also knew that his partner had
attended the trial thereof, but he did not know that the

said Isaac N. Peyton was the same person whom he knew in Spokane as "G. H. Morgan." It appears that the only persons in any way connected with the case, aside from respondent, who knew that the plaintiff therein was the same person known in Spokane as G. H. Morgan, were Mr. Griffitts, the attorney, two brothers of respondent, and a Mr. Bennett; the last three mentioned having been present at the time of the hearing before the referee, and some, if not all, of them having testified as witnesses.

On the 4th day of November, 1885, following the date of the entry of the decree aforesaid, respondent contracted a marriage with Mrs. Victor A. Houghton, a widow who resided in Spokane. The marriage was contracted by respondent in the name of G. H. Morgan, and was formally celebrated on said date. The marriage ceremony was conducted by a clergyman in the presence of witnesses, and under authority of a marriage license theretofore duly issued. Mrs. Houghton at the time of the marriage believed respondent to be an unmarried man, and had no knowledge of the divorce proceedings heretofore mentioned. She also believed respondent's real name to be G. H. Morgan, and was in no way advised to the contrary. Immediately following said marriage, respondent and said Victor Houghton Peyton left Spokane for a trip to California. They sojourned in California for some months, having in view the benefit of the respondent's health; he not having been in vigorous health when they left Spokane. While they were still in California, the appellant, who had continued to reside in Denver, learned that the man known in Spokane as G. H. Morgan was in fact Isaac N. Peyton, and she thereupon came to Spokane; arriving there on the 16th day of March, 1886. Soon thereafter she caused to be instituted against respondent

an action for divorce; the cause being entitled "Helen
M. Peyton v. I. N. Peyton, *alias* G. H. Morgan," and was
brought in the territorial court of the fourth judicial
district, for Spokane county.  She also caused a warrant
to be issued for the arrest of respondent on the charge of
bigamy.  About this time respondent and Victor Hough-
ton Peyton returned to Spokane from California, when
respondent was served with process in the said divorce
suit, and was also placed under arrest on said charge of
bigamy.  Respondent immediately gave bail for his ap-
pearance in the criminal proceeding, and employed the
firm of Houghton & Graves as his attorneys therein, and
also in said divorce suit.  Judge Houghton, of said firm,
was a brother of the deceased husband of Victor Houghton
Peyton and his wife was also a sister of the latter.  Said
Victor Houghton Peyton, on learning of the above men-
tioned proceedings, and the facts thereby made known,
was much distressed concerning her relations in the prem-
ises.  She at once sought the advice of her said brother-in-
law, and also of his law partner; desiring to know if she
was or was not the lawful wife of respondent.  It was
her purpose not to live longer with respondent as his wife
if she should be advised that she was not in fact his wife.
She then learned for the first time of the former divorce
proceedings in Klickitat county, and was advised by said
attorneys that the decree entered therein had dissolved
the marriage relation formerly existing between appellant
and respondent, and that her marriage with respondent
was a lawful one.  Respondent about this time left Spo-
kane, and went to Chicago, where he remained for some
months; and said Victor Houghton Peyton, relying in
good faith upon the aforesaid advice, joined respondent in
Chicago.  She continued to live with him as his wife,

and in the month of August following a child was born to them.

Meantime appellant had also filed a petition in the former divorce suit of Isaac N. Peyton *v.* Helen M. Peyton, which was brought in Klickitat county as aforesaid, in which petition she sought to vacate the decree rendered in that cause. The petition recited as grounds for the attack upon the decree that respondent was not a resident of Klickitat county at the time the suit was brought; that he had procured said decree by fraud, in that the allegations of his complaint were untrue, and the testimony given in support thereof was false; that he had concealed his whereabouts from her, and had adopted an assumed name for that purpose; that at the time of the institution of the suit he knew her place of residence, but that no service of process had been made upon her, and she had no notice of the institution of the suit, or the entry of the decree. At the time of the presentation of the petition to vacate said decree, she appeared in said cause, and moved for a change of venue thereof to Spokane county, which motion was granted, and the cause was transferred to Spokane county in the month of April, 1886, for further proceedings.

In the proceedings instituted by appellant as herein stated, she was represented by Nash & Kinnaird, attorneys of Spokane. During the months following there was much litigation in said proceedings, in the way of motions and applications of various kinds. Appellant sought to compel respondent to pay alimony, in the way of attorney's and court costs, and also for her own maintenance pending the proceedings. The court ordered such alimony to be paid, but respondent being in Illinois, and without the jurisdiction of the court, the order was not enforced. Thus the litigation proceeded until the month of Decem-

ber, 1886. During that month respondent returned to Spokane. The then district court was in session about that time, and it was expected that the trial on the charge of bigamy would occur at said term. At the spring term of court following respondent's arrest, a default had been entered for his failure to appear, and the forfeiture of his bail bond was declared. But upon his appearance at the next term the default and forfeiture were by the court set aside. Appellant was then in Spokane, and was not desirous of pursuing the charge of bigamy against respondent, but it was not known to her or her counsel whether the prosecuting attorney and the court would consent to the dismissal of the criminal case. It was, however, ascertained that, for reasons which were deemed satisfactory no objection would be interposed to the withdrawal of the case, and it was afterwards accordingly dismissed. About the time it was ascertained that the criminal case would be dismissed, negotiations were in progress between appellant's and respondent's counsel looking to a settlement of the aforesaid litigation between them. These negotiations led up to an interview in the law office of Houghton & Graves in the evening of December 12, 1886, at which interview appellant was present, together with Judge Nash, one of her counsel. The details of the pending negotiations were in some measure then discussed, and appellant expressed herself as satisfied and pleased with the result. It was agreed that, as a result of the proposed arrangement, appellant was to receive from respondent the sum of $3,000, and that upon the following day they should meet at the same place, and sign and deliver the papers necessary to carry the arrangement into effect. Accordingly upon the following day they met at the office of Houghton & Graves. Appellant was present during the entire time, together

with Judge Kinnaird, one of her counsel. Judge Nash, another of her counsel, was present at least a portion of the time. Respondent was present, together with his counsel, Houghton & Graves. Colonel Turner and Mr. Forster were also there as counsel representing clients who had litigation against respondent, and they were seeking to guard their clients' interests as far as they might become involved in any adjustment of property matters between appellant and respondent. Other counsel were also present a part of the time for a like purpose. At that time a general power of attorney from appellant to respondent was executed by her, its purpose being to enable respondent to cure titles to property he had previously conveyed. There were also certain deeds executed by appellant and respondent to adjust the property rights of others. Mr. F. H. Graves testified to the contents of a certain written contract which he says was also there signed by both appellant and respondent. He also testified that it is his recollection that the contract was not executed in duplicate, and that the single copy was delivered to Judge Houghton, his law partner. Mrs. Alice Houghton, widow of said Judge Houghton,—he having died since the date of said alleged delivery to him,—testified that after the death of her husband she found such a written contract among the private papers of the deceased. Another witness said she read it over to him, although he did not examine it and read it himself. Mrs. Houghton further testified that persons applied to her, in behalf of respondent, desiring her to deliver the paper to respondent. Victor Houghton Peyton, whom respondent had married as aforesaid, was a sister of the witness, but witness testified that she and respondent entertained a mutual dislike of each other, and that she would not gratify respondent by sending him the paper;

that she desired an interview with him, and required that he should come to her himself, if he wished to procure the paper; that afterwards, "in a little bit of pique and temper I destroyed it, and destroyed every other bit of paper I had with it which bore on this case." She testified that the paper was signed by respondent, and purported to be signed by appellant, whose signature she did not know, but that the signature appeared to be that of a woman; that it was also signed by Houghton & Graves and Nash, Kinnaird & Murray, as attorneys for the respective parties. The witness Graves aforesaid testified that the contract recited, in substance, the following: That the parties had theretofore been husband and wife; that a decree of divorce had been entered in Klickitat county, which decree was appropriately referred to; that thereafter appellant had commenced proceedings to vacate and set aside said decree; that there had never been any settlement of the property rights between the parties; that respondent was to pay appellant $3,000 in full and complete settlement of all her interests in the community property of the two parties, and in consideration of said $3,000 she was to abandon her contest as to the validity of that decree; that it was stipulated that the decree was valid, and that the grounds upon which it was assailed in the petition to vacate could not be sustained by appellant, and that it was to be abandoned; that the payment of the $3,000 was to be evidenced by notes, and that, if those notes were not paid when due, appellant might withdraw from the contract and resume the litigation; that if the notes were paid the terms of the contract were to be binding upon the parties, and upon their heirs, successors, and assigns; that the attorneys for the respective parties should at once, or as soon as convenient thereafter, and as soon as the business of the court would permit, see that

the necessary orders, judgments, and decrees were taken and entered to carry out the said contract in its letter and spirit; that the divorce suit brought by appellant against respondent should be dismissed. The witness further testified that he thought the contract contained a provision that another suit should be brought, but at all events that it was agreed between counsel for the respective parties that the court did not have jurisdiction in the Klickitat county divorce case to enter a decree concerning the property subsequent to the divorce decree, and that, if a decree concerning property rights were entered in that case, it would necessitate opening up the divorce decree, and that respondent would not consent to that, because he had been married, and a child had been born meantime; that it was finally agreed that a new suit should be instituted, in which it should be alleged that the decree of divorce did not make any provision for the disposition of the community property; that under the statute at that time the court might award a divorce without the disposition of the community property, or it might make a disposition of it; that allegations should be made showing what property respondent possessed; and that there should be a stipulation that appellant should take an *in solido* decree for $3,000 in bar of all claim to the community property. Other witnesses did not testify as to the said written contract, but Colonel Turner and Mr. Forster testified that the substance of the agreements and understandings then arrived at was as above stated. Appellant testified that she signed no such written contract; and Judge Nash, one of her then counsel, testified that, if she did do so, it was not when he was present. The witnesses seem generally to agree, however, that Judge Nash was not present nearly all the time on that day, and that his partner, Judge Kinnaird, was

present during the entire time, and personally superintended all details in behalf of appellant. Judge Kinnaird was dead before the time of trial of this cause, but a number of witnesses testified to the fact of his continued presence there, and of the part he took in behalf of appellant. They also identified his signature to various papers signed by him as appellant's counsel in forwarding the details above set forth, and also stated that he was a man of the highest personal and professional integrity.

In pursuance of the agreements and stipulations then made, notes aggregating $3,000 were executed by respondent to appellant, which were afterwards all paid. On the following day (December 14, 1886), appellant left for Denver, where she continued to reside, and did not return to Spokane until in the year 1900, after this suit was brought. Soon after the time of the completion of the negotiations aforesaid, the attorneys of the respective parties proceeded in the manner following: On the written stipulation of counsel filed in the case, the divorce suit brought by appellant against respondent in Spokane county was dismissed. The stipulation was signed by Nash, Kinnaird & Murray, as attorneys for the plaintiff in that suit (the appellant here). On another written stipulation filed in the Klickitat county divorce suit, the petition of appellant to vacate the decree of divorce in that case was dismissed, and an order for the payment of alimony theretofore entered was set aside. The stipulation was signed by Nash & Kinnaird as attorneys for the defendant in that action (the appellant here). The stipulation recited the following:

"It is hereby stipulated by and between plaintiff and defendant that said defendant has secured all property rights of plaintiff to which she is or at any time has been entitled; that the decree of divorce heretofore entered in

this cause in favor of said plaintiff and against defendant is valid and legal and that the petition of plaintiff filed herein to vacate the same cannot be maintained, and that said petition shall be dismissed by said court and be declared by such order of dismissal to be a bar to any further proceedings by defendant against said decree of divorce or on any or all of the matters alleged in said petition; that the order of alimony herein be vacated and plaintiff pay the court costs of said petition and proceedings thereon."

A new action was also commenced in Spokane county, entitled "Helen M. Peyton v. Isaac N. Peyton"; the complaint reciting, in substance, the following: That the parties were married and separated as hereinbefore mentioned; that, without the knowledge or consent of appellant, respondent had acquired and sold large amounts of property; that the property so acquired and sold was community property, and that appellant never joined in the sale thereof, or agreed thereto, and had no knowledge at the time that the same was sold; that appellant never received any of the proceeds of the sales of the said community property, but the proceeds were from time to time invested in other property; that respondent then owned and possessed certain property, which was particularly described; that appellant remained the wife of respondent from the time of their marriage until the 17th day of October, 1885, when they were divorced without any settlement of the property rights, and without any division of the community property. The complaint concludes with the prayer that the community rights of appellant be established and fixed, and that a decree be entered granting to her such portion of said property as she is by law entitled to, or that in lieu thereof, and in lieu of all her interest in and to any and all of said community property in the territory of Wash-

ington, she be allowed a sum in gross, to be fixed by the court, and that, when paid, such sum to be in lieu of, and in full satisfaction of, all appellant's rights and interests in the community property of appellant and respondent. The above complaint was signed by Nash, Kinnaird & Murray, as attorneys for the plaintiff therein (appellant here), and was verified by appellant herself over her own signature, and sworn to before J. M. Kinnaird, a notary public (one of her counsel), on the 13th day of December, 1886. Thereafter an answer to the complaint was filed by respondent, admitting certain allegations therein, and denying others not material to be mentioned here. Soon after the following written stipulation was filed in said cause:

"It is hereby stipulated and agreed that judgment herein upon the pleadings may be rendered in favor of the plaintiff for the sum of $3,000, and that said judgment shall be taken and considered as the full measure of plaintiff's interest in the property described in her complaint herein, and in lieu of any and all interest or claim she may have had upon the property of defendant under the laws of Washington Territory, by virtue of the relation of husband and wife heretofore existing between said plaintiff and said defendant."

The stipulation was signed by Nash, Kinnaird & Murray as attorneys for the plaintiff in that action (appellant here). In pursuance of the above stipulation, on the 20th day of December, 1886, the court entered a decree in accordance with the terms of the stipulation. After reciting certain facts, and finding that appellant was entitled to a judgment in the gross sum of $3,000, the decree concludes as follows:

"It is further ordered, adjudged, and decreed that, upon the payment or satisfaction of this judgment by the defendant, the community property mentioned and de-

scribed in plaintiff's complaint shall belong to the defendant as of his own sole and separate estate, and in that event said plaintiff shall be divested of all interest in or to any community property now or heretofore owned by defendant, and barred from claiming or further demanding from defendant, or any person claiming by, through, or under him, any interest in any property real or personal, and to which she may have been entitled under the statutes of Washington Territory by virtue of the relation· of husband and wife heretofore existing between said plaintiff and the said defendant, it being the intention of this decree to give the plaintiff said sum of $3,000 in lieu of her interest in the community property now or heretofore owned by defendant, and upon the payment of said sum to vest the interest in said property of ·plaintiff in the defendant in his own sole right, and to be considered as of his separate estate, and freed from any claim of plaintiff because of the relation heretofore existing as aforesaid."

Following the events heretofore outlined, respondent and Mrs. Victor Houghton Peyton returned to Spokane, and thereafter continued to reside together as husband and wife. Two other children were born to them, who are now lads approaching young manhood. Respondent and the mother of said children have at all times been received and recognized in social, church, and business circles as husband and wife, of which facts the appellant had knowledge. During the period of thirteen years following the proceedings which have been heretofore described, she took no steps to question the validity thereof. Occasionally. during the time she wrote to respondent and asked him to assist her financially. Respondent replied to some of the letters, and on at least one occasion sent her the sum of $75, but at no time did he concede that he was under any legal obligation to contribute to her support. Beginning with the year 1896, and in the years

following, respondent acquired wealth rapidly through mining investments and other sources, and it is conceded that at the time of the commencement of this action he possessed property of the value of $1,000,000 or more.

The foregoing extended recital of facts gathered from the evidence in this case has been deemed advisable in order that the relative status of the parties and of all others involved therein may fully appear, as it existed prior to and at the time this action was begun. The present action was brought by appellant against respondent for separate maintenance, and she asks a decree declaring the divorce decree entered in the Klickitat county case to be void and of no force or effect. The complaint is very long, and recites many of the matters heretofore stated, including the stipulations, judgments, and decrees already mentioned. She avers, however, that she did not authorize her attorneys to enter into the said stipulations, and did not know of their existence, or of the existence of the judgments and decrees thereon, until within a period of six months prior to the beginning of this suit. She alleges that she signed a power of attorney, which she said was to her attorney, Judge Nash, and not to the respondent, for the purpose of clearing up titles to real estate theretofore sold by respondent, and that in consideration thereof she received the sum of $3,000, but that she at no time recognized the validity of the Klickitat county divorce decree, an 1 at no time consented to release the community estate for the payment of said $3,000; that she left Spokane believing that she and respondent were still husband and wife; that he promised to maintain her, and she believed he would ultimately come to her and live with her as her husband. The respondent answered, pleading the aforesaid circumstances, and also the said written contract, stipulations,

judgments, and decrees. The answer also pleads the statute of limitations, and that appellant is estopped by her conduct to assert that she is still the wife of respondent, or that she has any interest in any property now held by him. A trial was had before the court without a jury, and the court found the facts substantially as they have been heretofore stated, including the existence of the written contract which was destroyed as aforesaid, and that appellant had authorized all steps and proceedings heretofore outlined. The court entered the following conclusions of law:

"1.   The adjudication by the district court of the Fourth Judicial District of Washington Territory, upon the petition of the plaintiff to vacate the decree of divorce, entered in Klickitat county case was a final and binding adjudication against the plaintiff upon all the matters and things alleged by her in this case touching the validity of that decree of divorce.

"2.   The adjudication by the court upon stipulation in the cause brought by the plaintiff against the defendant on the 13th day of December, 1886, together with the agreement hereinbefore referred to, with the payment of the $3,000 thereunder, was a final and binding adjudication in favor of the plaintiff and upon all matters and things alleged in the complaint touching the property rights of the defendant and herself.

"3.   Plaintiff, by her failure to pursue her petition to vacate the divorce decree, abandoned the same.

"4.   Plaintiff by all the matters and things done, agreed to and consented to by her receiving the money received by her, and by the reliance placed upon that settlement on the part of defendant and his present wife, and all the other facts and circumstances of the case, is now estopped to dispute either the validity of the Klickitat county divorce decree or the validity of the judgment upon her petition in that case, or the validity of the judgment in the suit of December 13, 1886.

"5.  Plaintiff by her delay and all the facts, conditions and circumstances in the case, is barred of any relief herein upon the ground of laches.

"6.  The cause of action of plaintiff as stated in the complaint, and each and every part thereof is barred by the statute of limitations of the territory and state of Washington.

"7.  Plaintiff is not entitled to maintain this suit in equity, because she has shown no reason for not pursuing the remedy given her by statute.

"8.  Defendant is entitled to a final decree as prayed for in his answer."

Upon the foregoing the court entered judgment dismissing the action, and that respondent recover his costs. From said judgment this appeal is prosecuted. The record in the case is necessarily very extensive, and the briefs of counsel are very long.  There are more than eight hundred pages of printed matter in the briefs submitted by counsel in the case.  Appellant's counsel separately assign one hundred and forty-six errors in their opening brief.  It is manifestly impracticable to undertake to discuss them all, and we do not think it necessary so to do. We will, therefore, proceed generally to discuss questions which involves errors complained of, and which we deem material.

Much space is devoted to the discussion of alleged errors based upon the court's refusal to hear evidence bearing upon the question of respondent's actual domicile at the time of the Klickitat county divorce proceedings, and upon alleged fraud in the procurement of the divorce.  It is urged that the court had no jurisdiction, and that the decree was void.  The decree stands upon the record, however, as one valid upon its face.  The court that entered the decree was one of general jurisdiction, having authority to determine cases of the class of that in which the

decree was entered. The subject-matter of the action was within the court's jurisdiction, and it had the power to enter the kind of decree that was entered in an action of that nature, provided it also had jurisdiction of the persons. The evidence shows that the files of the original case were transferred from Klickitat county to Spokane county on change of venue as aforesaid, at the time the petition to vacate the decree was filed, but the clerk of the court, as custodian of the records, is unable to find them. It seems probable from the evidence that they were taken from the clerk's office by some one of the several counsel who were, in behalf of their clients, interested in the litigation of 1886, and that they have been unintentionally misplaced and lost. The order of default recites, however, that the defendant in the case (appellant here) had been served with summons by publication, and the decree recites that the evidence was sufficient. At the trial of this cause a certified copy of a record was introduced in evidence, showing certain entries in what was called the "fee book,"—a book kept by the clerk of Klickitat county in 1885, corresponding in some of its features to the appearance docket kept by clerks of the superior courts at the present time. That record shows that a summons issued in the case and was returned; that afterwards an affidavit for publication of summons was filed and summons issued the same day the affidavit was filed. There is also an entry of the return of the summons fifty-two days later. It is held by some courts that the mere recital in a judgment or decree that there was service of a given kind is sufficient evidence of service, as against a collateral attack upon the judgment, when there is nothing in the record negativing the recital. Others hold that the record, aside from such recital, must disclose the evidence of the service. Under either view of the law, we think the

above record evidence, when taken in connection with the recitals in the order of default and in the decree, must be held to show, as against a collateral attack, that there was service by publication. There may have been facts existing which would have made the decree a voidable one under appeal, writ of error, or other appropriate direct proceeding instituted for the express purpose of avoiding it. But we think the record is sufficient to sustain the decree until it is so expressly and directly attacked.

"But the word 'void' can with no propriety be applied to a thing which appears to be sound, and which, while in existence, can command and enforce respect, and whose infirmity cannot be made manifest. If a judgment rendered, without in fact bringing the defendants into court, cannot be attacked collaterally on this ground, unless the want of authority over them appears in the record, it is no more void than if it were founded upon a mere misconception of some matter of law or of fact occurring in the exercise of an unquestionable jurisdiction. In either case, the judgment can be avoided and made *functus officio* by some appropriate proceeding instituted for that purpose; but if not so avoided, must be respected and enforced." 1 Freeman, Judgments (4th ed.), § 116.

"On the other hand, a *voidable* judgment is one which, though not a mere nullity, is liable to be *made* void when a person who has a right to proceed in the matter takes the proper steps to have its invalidity declared. It always contains some defect which may become fatal. It carries within it the means of its own overthrow. But unless and until it is duly annulled, it is attended with all the ordinary consequences of a legal judgment. The party against whom it is given may escape its effect as a bar or an obligation, but only by a proper application to have it vacated or reversed. Until that is done, it will be efficacious as a claim, an estoppel, or a source of title. If no proceedings are ever taken against it, it will continue throughout its life to all intents a valid sentence. If emanating from a court of general jurisdiction, it will be sustained by the

ordinary presumptions of regularity, and it is not open to impeachment in any collateral action." 1 Black, Judgments, § 170.

"Jurisdiction over the subject-matter is the right of the court to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending; and not whether the particular case is one that presents a cause of action, or under the particular facts is triable before the court in which it is pending, because of some inherent facts which exist and may be developed during the trial." Brown, Jurisdiction, .§ 1a.

See, also, 1 Black, Judgments, § 240; 1 Freeman, Judgments (4th ed.), § 120.

It has already been held in this state that where the court rendering a judgment has jurisdiction of the subject-matter, and adjudges that jurisdiction has been properly acquired over the person of the defendant, where there is nothing in the record to contradict it, such adjudication is as conclusive as that upon any other question in the case, when collaterally attacked. *Rogers v. Miller,* 13 Wash. 82 (42 Pac. 525, 52 Am. St. Rep. 20); *Kizer v. Caufield,* 17 Wash. 417 (49 Pac. 1064); *Munch v. McLaren,* 9 Wash. 676 (38 Pac. 205).

To the same effect are the following: *Bonsall v. Isett,* 14 Iowa, 309; *Ballinger v. Tarbell,* 16 Iowa, 491 (85 Am. Dec. 527); *Callen v. Ellison,* 13 Ohio St. 446 (82 Am. Dec. 448); *Hendrick v. Whittemore,* 105 Mass. 23; *Jackson v. State,* 104 Ind. 516 (3 N. E. 863); *Delaney v. Gault,* 30 Pa. St. 63.

Appellant seeks to have the decree of divorce declared void as having been obtained by fraud on the part of respondent.

"Fraud in procuring a judgment cannot be shown by the parties to such judgment, in any collateral proceeding." 1 Freeman, Judgments (4th ed.), § 132.

The author cites the following cases, all of which sustain the above proposition, viz: *Carpentier v. Oakland,* 30 Cal. 439; *Smith v. Smith,* 22 Iowa, 516; *People v. Downing,* 4 Sandf. (N. Y.) 189; *Blanchard v. Webster,* 62 N. H. 467.

A distinction seems to be observed between parties to an action in which a judgment has been obtained by fraud and strangers to the record who may be affected thereby. Thus the same author, at §336, observes as follows:

"Whenever a judgment or decree is procured through the fraud of either of the parties, or by the collusion of both, for the purpose of defrauding some third person, he may escape from the injury thus attempted by showing, even in a collateral proceeding, the fraud or collusion by which the judgment or decree was obtained."

Again, in § 334, the same author further observes:

"The parties to an action cannot impeach or set at naught the judgment in any collateral proceeding on the ground that it was obtained through fraud or collusion. It is their business to see that it is not so obtained. If, without any fault or neglect of one party, his adversary succeeds, by fraud, in obtaining an inequitable and unauthorized judgment, he must take some proceeding prescribed by law to annul the judgment, and cannot, in the absence of such annulment, treat it as invalid. It is only third persons who have the right to collaterally impeach judgments. They are accorded this right because, not being parties to the action, nothing determined by it is, as to them, *res judicata.*"

See, also, *Boston, etc., R. R. Corp., v. Sparhawk,* 1 Allen, 448 (79 Am. Dec. 750.); *Meckley's Appeal,* 102 Pa., St. 536; *Clark v. Douglass,* 62 Pa. St. 408; *Christmas v. Russell,* 5 Wall. 290.

The same principle is discussed, and many authorities cited, in *Knapp v. Thomas,* 39 Ohio St. 377, 387 (48 Am. Rep. 462).

This action is a collateral attack upon the divorce decree by the defendant in that action. The purpose of this action is not simply to annul the divorce decree, but its primary object is an entirely separate and independent matter, viz., to secure separate maintenance or an interest in respondent's property, and as a mere incident thereto, based upon necessity before recovery can be had, it is sought to have the original judgment declared of no effect. A "collateral attack" is defined as follows:

"But if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral and falls within the rule." 1 Black, Judgments, § 252.

Again, in 12 Am. & Eng. Enc. Law, p. 147j, a collateral proceeding is defined as being, "any proceeding which is not instituted for the express purpose of annulling, correcting or modifying the judgment or enjoining its execution." The above rule was approved and adopted in *Morrill v. Morrill,* 20 Ore. 96 (25 Pac. 362, 11 L. R. A. 155, 23 Am. St. Rep. 95). To the same effect is *Kalb v. German Savings & Loan Society,* 25 Wash. 349 (65 Pac. 559). It is true that in the two last cited cases the judgments objected to were not mentioned in the complaint, but by reply and in the introduction of evidence it was sought to avoid them. However, the principle involved is the same as here. They sought specific relief as to property rights, and, in order to obtain that relief, it became necessary to attack the judgments. In each instance the attack was held to be collateral.

If, however, this action should be treated as a direct attack upon the judgment, the defenses of the statute of limitations, laches, estoppel, and former adjudication are all

pleaded to the complaint. Referring to the statute of limitations in this state, this court said in *Citizens' National Bank v. Lucas,* 26 Wash. 417 (67 Pac. 252):

"It seems to us that the legislature in the passage of this act attempted to provide a limitation for every kind of action that could be brought in the courts."

The attack upon this judgment is based upon allegations of fraud practiced by the prevailing party. The court has power to vacate a judgment for fraud practiced by the successful party in obtaining the judgment. Bal. Code, § 5153. The petition for this purpose must be brought within one year. §5156 of same volume. Where a fraud has been concealed, or is not known to the moving party in time to take advantage of the statutory remedy, resort can be had to a suit in equity to annul the judgment; but otherwise the statutory remedy is exclusive, and must be pursued within the time fixed by statute. *Chezum v. Claypool,* 22 Wash. 498 (61 Pac. 157, 79 Am. St. Rep. 955). The appellant knew of the rendition of this decree, as we have already seen, in the spring of 1886, after its rendition in October, 1885. She filed a petition to vacate it, and alleged substantially the same grounds now urged. That petition was abandoned. She now says she did not so understand it or so intend, but the finding of the court is otherwise, and, we think, is sustained by the testimony. The character of Judge Kinnaird, her counsel who signed the stipulation upon which the judgment dismissing that petition was entered, is shown to have been of such high standing, personally and professionally, that it seems incredible, when all the evidence is considered, that the dismissal should have been made without appellant's authority. Moreover, the complaint in the case heretofore mentioned as having been brought for the purpose of adjusting property rights in

1886, avers that appellant "remained the wife of defendant [respondent] from the time of their said marriage till about the 17th day of October, 1885, when they were divorced in this judicial district without any settlement of property rights, and without any division of the community property." The prayer of the complaint, after asking for a gross sum to be fixed as her interest in the community property, then concludes: "and that when so paid said sum be in lieu of and in full satisfaction of all of plaintiff's rights and interests in the community property of plaintiff and defendant." That complaint was sworn to by appellant herself, and she swore that she knew the contents thereof, and believed them to be true. The above fact, taken in connection with all the other evidence, and the record made on the stipulation of her counsel to dismiss the petition to vacate, we think, must be taken as conclusive against her upon that question. An order dismissing a petition to vacate a judgment is final and appealable, and is therefore *res judicata* of the matters set up in the petition. *Kuhn v. Mason*, 24 Wash. 94 (64 Pac. 182).

If, however, it were true that there were reasons why she could not pursue her statutory remedy within the time, the general statute of limitations must apply here also. Section 4800, Bal. Code, provides that an action for relief upon the ground of fraud must be brought within three years, but the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting a fraud. Under the evidence in this case, appellant clearly knew of the facts now charged as fraud as long ago as 1886. She alleges that she was fraudulently misled as to her rights in the settlement heretofore outlined, and did not know thereof until within six months prior to the beginning of this suit. But we think the evidence does not sustain the allegation, and the trial

court so found. This court, in *Stearns v. Hochbrunn,* 24 Wash. 206 (64 Pac. 165), held that it is sufficient, as a rule of pleading, under the statute, to allege that the fraud was not discovered until a given time, without alleging the facts showing diligence in the effort to discover it, and intimated that it is rather a rule of evidence, than a rule of pleading, that means of discovery is equivalent to actual discovery. We are satisfied with that statement of the rule. It in no way contravenes the well-known rule that means of discovery may be treated as actual discovery when it appears from the evidence that the party aggrieved might, with reasonable diligence, have sooner discovered the fraud. This rule applies to appellant here. For thirteen years she remained silent, knowing that respondent was living with another as his wife, that children were being born, and that all the sacred relations of the family arose therefrom, knowing that the rights of innocent children were being involved, and that respondent and their mother were continually recognized as husband and wife, still she did not move. While the history leading up to this case may appear as if culled from story or fiction, and while that history may appeal to sympathy in behalf of appellant, yet, for reasons heretofore assigned, it must be held that she cannot maintain this action. We think the court committed no material errors, and the judgment is affirmed.

REAVIS, C. J., and FULLERTON, ANDERS and DUNBAR, JJ., concur.

MOUNT, J., not sitting.

WHITE, J. (concurring). The appellant by her complaint in this action seeks to set aside, on the ground of fraud in obtaining the same,, a decree of divorce obtained by the respondent from the

appellant in 1885 in the territorial district court at Gol-
dendale, in Klickitat county.   It alleges facts which, if
true, rendered the decree absolutely void.   The appellant
by her complaint also seeks to set aside and annul, on the
ground of fraud, certain judgments rendered by the dis-
trict court at Spokane Falls in December, 1886.   The ap-
pellant by her complaint also seeks to have decreed to
her sufficient money for her separate maintenance.   The
prayer of the complaint, in substance, is:

"Appellant prays judgment against respondent for
maintenance, and that the court allow and decree her such
sum or sums of money to be paid by him, at such time and
times as the court shall deem proper, for her maintenance
and support; and prays that the court by its judgment and
decree declare and decree to be void and of no force or ef-
fect the pretended decree of divorce and the said pretended
stipulations and judgments hereinbefore mentioned, and
for all proper relief."

It is held in the opinion that this action is a collateral
attack upon the decree of divorce.   I do not assent to this.
No demurrer was interposed to this complaint, and no
motion was made requiring the appellant to separately
state her causes of action.   If there was eliminated from
the complaint every allegation save those alleging facts as
to the fraud in obtaining the decree of divorce, and the
prayer of the complaint that the court would adjudge
such decree fraudulent, no one would contend that the
complaint was not a complete bill in equity to set aside the
decree on the ground of fraud.   Courts of equity have
inherent power to set aside void judgments and decrees
obtained by fraud.   A bill in equity for this purpose is
an appropriate proceeding, and, when a judgment is
sought to be annulled in this way, it has always been held
to be a direct attack upon the judgment; and respectable
authority to the contrary cannot be found in the books.

Every one of the causes of action stated in the complaint, if they may be regarded as independent causes, calls for equitable relief. They could be properly joined in one bill. The majority opinion is based upon what is said in 1 Black, on Judgments, § 252, and *Morrill v. Morrill.* 20 Ore. 96 (25 Pac. 362, 11 L. R. A. 155, 23 Am. St. Rep. 95); and *Kalb v. German Savings & Loan Society,* 25 Wash. 349 (65 Pac. 559). The meaning of the text in Black will be better understood by a reference to the authorities cited by the author in its support.

*Lee v. Kingsbury,* 13 Tex. 68 (62 Am. Dec. 546), was a suit in trespass to try title. The defendant claimed under a mortgage foreclosure sale. On the trial, evidence was offered to show that the land, at the time the mortgage was executed, was homestead, and therefore that the mortgage was void, and therefore that the decree foreclosing same was void. It was clearly a collateral attack. It was held that the validity of the mortgage was the very question at issue, heard and determined in the foreclosure suit, and that the evidence attacking the foreclosure judgment upon that ground was not admissible in that suit. So in *Sturgis v. Rogers,* 26 Ind. 1,—suit on appeal bond, —it was held that the judgment affirmed on appeal in the case in which the bond was given could not be assailed. So, in an action on a promissory note given in satisfaction of a judgment, it was held the validity of the judgment could not be attacked. *Mitchell v. State Bank,* 1 Scam. 526.

In these cases the judgment was attacked in a subsequent suit collaterally, not for the purpose of having the judgment annulled, but merely for the purpose of defeating the action in the second suit. In these cases, had the attack been permitted, the judgments would not have been annulled, but the only result would have been the defeat of

the second action. These and similar cases illustrate the
meaning of the quotation from Black, where it is said that
if the action or proceeding has an independent purpose,
and contemplates some other relief or result, although the
overturning of the judgment may be important, or even
necessary to its success, then the attack would be collateral,
and show that the proposition as stated in his text, whether
correct or not, has no application here. But even that
rule, as announced by Mr. Black, is confined to cases
where the judgment was attacked upon the ground of
error and irregularities, and has no application to judg-
ments rendered without jurisdiction of the subject-matter
or the parties. This is made clear by other portions of
the same section, quoted from by respondent, and authori-
ties there cited, among which are: *Penrose v. McKinzie,*
116 Ind. 35 (18 N. E. 384), where it is held that the
owner of land may maintain a suit to annul a void judg-
ment, so as to have the apparent lien upon his land created
by such judgment removed, and that this is a direct, and
not a collateral attack. And *McCampbell v. Durst,* 73
Tex. 410 (11 S. W. 380), where it was held that a suit
by the vendee of the administrator to set aside certain
judgments of the probate court, and to cancel deeds ex-
ecuted under such judgment, to remove same as a cloud up-
on plaintiff's title, was a direct attack upon the judgment,
and properly maintained. In that case the court said:

"These proceedings constitute a part of appellant's
claim and eventuate in the deeds, against both of which
relief is directly sought in this suit. We think the suit
is not collateral, but a direct proceeding to vacate the
deeds," etc.

*Daniels v. Benedict,* 50 Fed. 348, is an authority in
point. There the widow brought suit in equity for par-
tition, and to have allotted to her her share of the estate,
and also, to that end, to have annulled a fraudulent decree

of divorce obtained against her by her husband a number of years prior to his death; setting out fully in her bill the marriage, the alleged divorce, and the facts rendering the decree of divorce fraudulent and void. A demurrer to the bill was overruled, the court holding that the suit was in all respects properly brought. In that case, had the decree of divorce been valid, the widow would not have been entitled to partition of his estate, and hence she sought by her bill to have the decree of divorce annulled. If that was not a collateral attack, certainly the attack here is not collateral.

*Morrill v. Morrill,* 20 Ore. 96 (25 Pac. 362, 11 L. R. A. 155, 23 Am. St. Rep. 95), cited in the opinion, is not opposed to the view contended for by the appellant. That was a suit to quiet title. The defendant claimed a portion of the lot under a judgment of partition had in a suit between him and the plaintiff, in which, admittedly, the court had jurisdiction both of the subject matter and of the parties. Defendant relied upon that judgment. Plaintiff, in her reply, sought to attack it for fraud and irregularities. The court said:

"It is first important to determine whether this is a direct or collateral attack on this decree. . . . The complaint contains no allegations concerning this decree, but the first mention thereof is in the answer, where defendant pleads it as an estoppel. The plaintiff then seeks to avoid its effect by averring in the reply matters which she claims are sufficient to vitiate it. This is undoubtedly a collateral attack. It is an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying the decree.

And further on in the opinion says:

"As we have already said, this can not be considered a direct attack upon this judgment. No reference is made

to the judgment in the complaint. No facts are alleged upon which a court could base a decree annulling the decree or judgment."

The court there held the attack collateral, because it was not made in the complaint; because the suit was not brought for the purpose of having the decree annulled; because there was no allegation upon which any judgment could have been rendered annulling the decree.

But in the case at bar the attack *is* made in the complaint; the suit is brought for the purpose—the express purpose—of annulling the alleged decree of divorce and the other judgments; allegations were made in the complaint upon which a decree can be rendered annulling that decree and those judgments. Under the ruling, then, in *Morrill v. Morrill, supra,* the attack here upon the decree of divorce, as well as upon the judgments entered in December, 1886, is a direct and not a collateral attack. It will be observed that the suit, in *Morrill v. Morrill* was one to quiet title, and for that purpose it was sought to have the decree of partition annulled. But it is not suggested that the fact that the suit was also to quiet title would have made it any the less a direct attack had the attack been made in the complaint.

*Kalb v. German Savings & Loan Society, supra,* was a suit alleging tenancy in common and asking partition. It was met by answer setting up a judgment quieting title as against the plaintiff. The reply alleged facts to invalidate that judgment. We said:

"It will be readily observed that this is not an action to set aside the judgment in French v. Dennis, but one seeking to have Herbert Dennis, the defendant in that action, declared to have an interest in said property, notwithstanding a judgment declaring he has no interest. It is well, therefore, to determine at the outset whether this

action is a direct or collateral attack upon that judgment. No mention of the judgment in French v. Dennis is made in the complaint herein. The answer, after denying all the allegations in the complaint, sets up the judgment as a bar to plaintiff's right of recovery, even if he ever had any interest in the property. The reply, after denying the allegations of the answer, sets out facts which plaintiff claims invalidated the said judgment."

From this it is plain that we only intend to hold that the attack was not direct, but collateral, because the attack was not made in the complaint; following in this *Morrill v. Morrill, supra,* and other cases announcing the same rule for the same reasons. But it is answered that it makes no difference whether the attack is made in the complaint or in the reply; that the test is whether the suit is brought to annul the judgment. We must not overlook the fact that the purpose of the suit is determined by the complaint, and not by the reply,—a purely defensive pleading. In *Dormitzer v. German Savings & Loan Society,* 23 Wash. 132 (62 Pac. 862), in passing upon a similar question, we said:

"The respondent claims that the complaint in this action is to foreclose the mortgages therein mentioned, and that the probate proceedings by which title to one-half of the property in controversy passed from the minor heirs to F. M. Tull, under whom respondent claims, can not be questioned, because the same would be a collateral attack. The complaint in apt and specific allegations attacks directly the probate proceedings and the guardian deeds thereunder,"—and we overruled the contention.

The quotation from the Am. & Eng. Enc. Law to the effect that "any proceeding which is not instituted for the express purpose of annulling, correcting or modifying the judgment or enjoining its execution." will not bear the construction put upon it in the opinion. "Express pur-

pose" does not mean "exclusive purpose," and the complaint has for one of its purposes the "express" purpose of annulling the decree. The facts in the complaint are stated as constituting one cause of action. It is immaterial whether the facts are stated as constituting several causes of action, or as one. Courts of equity should disregard all such technicalities. The object to be obtained under our system of pleadings is to avoid a multiplicity of suits. We have but recently held, in an opinion by Justice DUNBAR, that the status of real estate owned by the husband and wife, and claimed to be community property, and which the wife claimed as her separate estate, could be determined in an action for separate maintenance. *Branscheid v. Branscheid,* 27 Wash. 368 (67 Pac. 812). We also have recognized as a correct practice that, where the defendant denied the existence of a partnership in a bill brought for an accounting between alleged partners, the court could first determine as to the existence of the partnership, and after having determined that could direct an accounting. *Bingham v. Keylor,* 25 Wash. 156 (64 Pac. 942). So in the present case the court might have determined, on the allegation of the complaint, whether or not the decree of divorce was fraudulent, and then might have adjudged, on such determination, whether or not the appellant was entitled to separate maintenance. The mere fact that the court has heard the entire case, without first determining whether or not the decree of divorce was void, is immaterial, as that can affect only the question of costs.

For the foregoing reasons, I think the complaint is a direct attack upon the decree of divorce; that, in a direct attack, recitals in the judgment are not conclusive; and that want of jurisdiction may be brought to the attention

of the court by facts outside of the record. *Dane v. Daniel, ante,* 155 (68 Pac. 446.)

The statute, § 5153, providing for setting aside a judgment for fraud within one year, is a concurrent remedy with the right to have such a judgment set aside by a bill in equity. The opinion seems to hold that, if the fraud is discovered within the year after the rendition of the judgment, the statutory remedy alone must be pursued. I do not assent. Independent of any statute, the court has the inherent power, on motion, to set aside at any time a void judgment. *Dane v. Daniel, supra.*

Thirteen years before this action was brought, the appellant was fully informed as to the manner in which the decree of divorce was obtained. She knew the judgment was valid upon its face, and so far as disclosed in the judgment roll. She knew that rights adverse to her interest might be claimed under the judgment. She knew that, as the decree stood, it could be used as a defense to an action for separate maintenance. For thirteen years she stood by and acquiesced in the decree. She has been guilty of such laches as to now preclude her from instituting a suit in equity to set aside the decree. It should be allowed to stand for what it is worth. The appellant strenuously urges that the agreement between the respondent and appellant testified to by Mr. Graves and Mrs. Houghton, should be ignored, because contrary to public policy. Concede that it is against public policy; the law for that reason does not require that this whole matter be opened up at this late day. Public policy will be best subserved in this instance by leaving the appellant and respondent where they placed themselves in 1886.

"A court of equity," said Lord Camden, "has always refused its aid to stale demands, where the party slept upon his rights, and acquiesced for a great length of time.

Nothing can call forth this court into activity, but conscience, good faith and reasonable diligence; where these are wanting, the court is passive, and does nothing." *Speidel v. Henrici,* 120 U. S. 377, 387 (7 Sup. Ct. 610).

The business of this court is so crowded that time for the consideration of other matters does not permit of a more extended statement of my reasons for coming to the conclusions reached by me in this case. I therefore concur in the result.