[Nos. 9585, 9586. Department Two. August 25, 1911.]

ALASKA BANKING & SAFE DEPOSIT COMPANY, *Respondent,* v. THOMAS C. NOYES *et al., Appellants.*

ALICE NOYES MURRAY *et al., Appellants,* v. ELMIRA NOYES *et al., Respondents.*[1]

EXECUTORS AND ADMINISTRATORS—DECREE OF DISTRIBUTION — CONCLUSIVENESS—AS CONSTRUCTION OF WILL. A final decree of distribution in probate, setting off half of the property as the community property of the widow, and passing half to the distributees in the will, is conclusive if unappealed from, and cannot be collaterally attacked by showing that the property was the separate property of the deceased and that all passed under the will.

APPEAL—REVIEW—MOOT QUESTIONS. Where the final order of distribution amounted to a construction of the will and was unappealed from and conclusive, the supreme court will not construe the will at the request of a portion of the parties, where there are objecting parties whose rights could not be affected by the decision.

EXECUTORS AND ADMINISTRATORS — DISTRIBUTION — ESTOPPEL—ASSENT TO PROCEEDINGS. Where a final decree of distribution was entered in 1903, setting aside the undivided half of the property to the widow as her community property, and the other half to the devisees named in the will, all notices having been given and its integrity not questioned until 1910, parties and third persons dealing with it on the faith of the record are estopped to defeat intervening equities by the claim that it was the separate property of the deceased and as such subject to restrictions in the will, in view of the presumption that property standing in the name of married persons is community property.

[1]Reported in 117 Pac. 492.

WILLS — PROBATE OF FOREIGN WILL — ANCILLARY ADMINISTRATION. The probate of a foreign will upon a foreign certificate of probate, is not ancillary to the foreign proceeding in such a sense that the final distribution of real property located in this state passing under the will would not be a final construction of the will.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered December 9, 1910, in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to foreclose a mortgage; also, an appeal from a judgment dismissing an action to enjoin the trial of the foreclosure action. Affirmed.

*Shepard & Daly*, for appellants.

*Bogle, Merritt & Bogle*, for respondent.

CHADWICK, J.—On March 21, 1902, John Noyes, a resident of Montana, died testate, seized of real and personal property in Montana, and certain property known as the Rainier Grand Hotel in King county, in this state. The will was propounded in Montana, and was there admitted to probate on April 21, 1902. On May 1, 1902, the will, with certificate of probate duly attested by the Montana court, was filed in the superior court of King county, and on May 16, 1902, it was admitted to probate. Letters of administration with will annexed were issued to F. S. DeWolfe. The estate was administered as the community property of John Noyes and Elmira Noyes, his wife. The regularity of the probate proceedings, of which all the parties interested had notice and of which the court had jurisdiction, cannot be questioned. A decree of distribution was in due season formally entered, whereby the court set over to the widow, Elmira Noyes, one-half of all the property real and personal as her own as her community interest therein. The remainder was distributed, one-half to Elmira Noyes and one-half to the four children of the decedent, the latter one-half to be held by Elmira Noyes and her children as tenants in

22—64 WASH.

common, subject to the conditions and restrictions contained in the will, which is in form as follows:

"In the Name of God, Amen.

"I, John Noyes, of Seattle, in the state of Washington, being of sound mind and memory, but realizing the uncertainties of life, do hereby make, publish and ordain this my last will and testament, that is to say:

"First: I give, bequeath and devise to my wife Elmira Noyes, one undivided half interest in and to all of my property, real, personal, and mixed, and wherever situated. To have and to hold the same unto my said wife, and to her heirs and representatives and assigns forever.

"Second: I give, bequeath and devise unto my children Alice (married to W. McC. White), John D. Noyes, Thomas C. Noyes and Ruth (called Dolly) Noyes, the remaining undivided half interest in and to all my property, real, personal and mixed, and wherever situated, in equal shares and proportions (one undivided eight interest each), To have and to hold the said one undivided half interest unto my said children in the shares and proportions mentioned, and to their heirs and representatives and assigns forever. This devise to my children, however, is made subject to the following conditions, viz:

"Third: It is my will and I so direct, that all the property which I now own, or which I may own at the time of my death, and which is or shall be situated in the city of Seattle, in the state of Washington, shall descend under this will to my wife and children in the proportions hereinbefore mentioned, but the same shall remain and be held by my said wife and children as tenants in common, and neither my wife nor any of my children shall sell or dispose of the same or any part thereof, or any interest therein, until after the death of my wife, but until such time the same shall be under the control and management of my wife solely, who shall manage the same and collect the rents, issues and profits arising therefrom, and she, my said wife, shall have for her own use one-half of the rents and profits arising from such property after the payment of all costs and expenses, and the remaining rents, issues and profits, after the payment of expenses, shall be paid to my said children in proportion to their respective holdings in the said property. This clause shall apply only to real estate in the said city of Seattle, and shall not apply

to personal property which at the time of my death shall be situated in the said city of Seattle. My object in placing this restriction upon the disposal of my Seattle property is that the same may remain in my family for their use until the death of my wife, and that no other person may acquire any interest in the same or in the rents or profits arising therefrom, and any conveyance which any of my devisees shall make or attempt to make of any of the said property or any interest therein shall not take effect until the death of my wife, nor shall any person under any claim whatever have any right to the possession of said property, or any interest therein, or to any of the rents, issues or profits arising therefrom, until the death of my wife, but until her death she shall have the entire control and management of the same, and shall appropriate the rents, issues and profits as hereinbefore directed, and not otherwise, and this devise is made subject to such conditions.

"Fourth: I hereby nominate and appoint my wife Elmira Noyes the sole executrix of this my last will and testament and direct that she act as such without bonds.

"Witness my hand at Butte City, in Silver Bow county in the state of Montana, this seventh day of November A. D. 1898.                           John Noyes."

On December 21, 1907, Elmira Noyes conveyed an undivided one-fourth of the Rainier Grand Hotel property to Thomas C. Noyes, who thereafter made a mortgage in favor of the Alaska Banking & Safe Deposit Company to which we shall hereafter refer as the Alaska Company. On November 5, 1908, Thomas C. Noyes, his wife joining him, executed another mortgage in favor of the Alaska Company. This mortgage recites that it was executed so that the community interest of the parties, if any, might be subject to the terms of the mortgage made by Thomas C. Noyes alone. On June 23, 1910, Thomas C. Noyes and his wife executed a deed, reconveying the one-fourth interest theretofore conveyed by Elmira Noyes to Thomas C. Noyes. While the title was in Thomas C. Noyes, an attachment was levied upon his interest in the hotel property by certain of his creditors. On June 16, 1910, the Alaska Company began this action to foreclose

its mortgage. The right to foreclose is resisted upon several grounds, one of them being that the mortgage was given to secure an antecedent debt, and that it is therefore subject to the superior equities of those claiming under the will. It will be seen that this question, admitting that a mortgage for an antecedent debt is subject to equities, will depend upon our ruling upon the main issue tendered by appellants, which is that the will, taken as a whole, creates no more than a life estate in Elmira Noyes in the Seattle property, subject to a trust in the rents, etc., in favor of the other devisees, and that there is no power of alienation in any one for any part of the property during the lifetime of Elmira Noyes.

The force to be given to a decree of distribution is no longer an open question in this state. In *In re Ostlund's Estate*, 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990, it was contended that the decree had been erroneously entered. The decree was upheld. It was there said:

"The contention that the court, in rendering the decree, erroneously determined who was entitled to the property as distributee upon distribution of the estate of Elsie Ostlund, goes only to the merits of the question then before the court, and is wholly foreign to the question of the jurisdiction of the court to determine who was entitled to the property then being distributed. . . . It is true the decree does not create the title in the distributees, but it is a solemn adjudication of who acquired the title of the deceased, and if rendered upon due process of law is final and conclusive upon that question. Its very object and purpose is to judicially determine who takes the property left by the deceased."

It was the purpose of the court in that case to forever set at rest the opinion, prevailing to some extent, that a probate proceeding was something of less importance than an ordinary civil action, and that a decree formally entered could be questioned by any one although a party, where, as in that as well as in this case, it was thereafter believed to have been entered upon a mistake of fact or an erroneous conception of the law. The remedy of a party in all such cases is by ap-

peal, and the *Ostlund* case brings decrees entered in probate within the rules governing collateral attack in civil actions, as declared in the following decisions: *Peyton v. Peyton*, 28 Wash. 278, 68 Pac. 757; *Wick v. Rea*, 54 Wash. 424, 103 Pac. 462, and cases there cited.

Having arrived at this conclusion, it is not incumbent on us to discuss the law of restraint upon alienation or the doctrines of life estate and incidental trusts. The decree of the lower court foreclosing respondent's mortgage is therefore affirmed.

While the foreclosure suit was pending, Alice Noyes Murray and Ruth Noyes Heinze began an independent action, setting up the theory we have briefly outlined; that is, that the Seattle property was the separate property of John Noyes, and as such was entirely controlled by the restrictive clauses of the will; that the proceeding was one primarily for the probate of the will; that no issue as to the title of John Noyes, or the claim of Elmira Noyes, was tendered; and that the complainants had no notice until the commencement of these proceedings of the fact that one-half of the property had been set over to Elmira Noyes as her community interest in the estate.

It is contended that the probate proceedings were such as to deprive complainants of their property rights in defiance of the fourteenth amendment to the constitution of the United States. To their complaint Elmira Noyes, the widow, filed a cross-complaint, in which she sets up, that all orders and proceedings occurring in the probate proceeding were taken without her knowledge; that the administration of the estate was directed by the administrator upon the mistaken theory that our community property law attached to the property of nonresident spouses, an error common to the practice and the profession until the decision in *Brookman v. Durkee*, 46 Wash. 578, 90 Pac. 914, 123 Am. St. 944, 12 L. R. A. (N. S.) 921, had been pronounced. This case came on for hearing at or about the same time the foreclosure case was

called for trial, upon demurrers to the complaint and cross-complaint. The Alaska Company, the only respondent filing a brief in this court, demurred upon the ground that another action was pending, and the complaint did not state facts sufficient to constitute a cause of action. Like demurrers were filed by the attaching creditors, who were made parties to this suit. Thomas C. Noyes and wife and John D. Noyes demurred to the complaint, upon the ground that it did not state facts sufficient to constitute a cause of action. Defendants Bogle, Merritt & Bogle demurred upon the several grounds that another action was pending, that there was an improper joinder of actions, that there were no facts constituting a cause of action, and that the action had not been begun within the period limited by law. Upon formal hearing, all of these demurrers were sustained, presumably upon the ground that they did not state facts sufficient to constitute a cause of action. Whereupon the court dismissed the complaint and cross-complaint. Plaintiffs had demurred to the cross-complaint but, so far as the record shows, the issue thus joined was not disposed of. This latter case is brought to our court upon the appeal of Alice Noyes Murray and Ruth Noyes Heinze, and in their brief they say:

"It is of the utmost importance to all the devisees under the Noyes will that it shall be speedily ascertained, by a final decision of this court, whether the restrictive clause of that will is or is not wholly or partially void for repugnancy. If the judgment in the foreclosure suit which this cause was brought to enjoin should be affirmed, on the appeal therefrom pending in this court and to be heard at the same time as this appeal, a refunding of that mortgage debt by the placing of a new mortgage upon the entire interest in the Rainier-Grand Hotel property would be their only means of saving the quarter interest of Thomas C. Noyes from loss through a sheriff's deed under the foreclosure. This means they are all willing to resort to, if necessary, in order to preserve their interests from the complications threatened by undivided ownership with strangers. But a mortgage cannot be placed while their power of alienation rests in doubt; and

the period of redemption from the foreclosure will expire early in February next. Therefore we earnestly request that this court, whatever may be its views upon the other questions raised on these appeals, and however unnecessary, consequently, the court may deem a construction of the will to be, will pass directly upon the question here discussed, and declare whether the will does or does not lawfully restrain alienation."

The status of the property having been declared by the decree of distribution, of which all parties had notice and from which no appeal was taken, we feel that it would be a work of supererogation on the part of this court to construe the will of John Noyes; for, so long as there are objecting parties, the courts are powerless to annul the decree or to limit its effect in an independent action. The defendants John D. Noyes, Thomas C. Noyes, and his wife, appear as objectors, and as such are entitled to insist that the decree of distribution shall stand as it is. If the parties were all agreed that the probate proceedings were prosecuted upon a wrong theory, that the property was the separate property of John Noyes, deceased, and should have been distributed as the plaintiffs Alice and Ruth and the widow, Elmira Noyes, now insist, we know of no policy or statute that would prevent a court of equity from entering a decree voicing the present will of those concerned; or the parties might, being so agreed, accomplish the same purpose by contract. But so long as they are not agreed and the interests of third parties are undisposed of, it would accomplish no purpose for us to say what might or should have been held had the court had other light of law and fact at the time the decree of distribution was entered.

But independent of our holding that the decree of distribution is conclusive, and however forcible the contention of appellants might have been if urged in the probate proceeding or upon distribution, we feel that, so far as the Alaska Company and others similarly situated are concerned, all

parties are bound by the decree, sustained as it is by the conduct of the parties, which may be properly termed acts of construction from the time the petition for the probate of the will was filed until the decree was entered. The will was the subject of the court's intervention, and the estate was administered and distributed as community property. The decree was in itself a construction of the will. It was assumed that the undivided half of the estate was the property of the widow. The decree of distribution was entered on July 23, 1903, and from it no appeal was taken. All notices provided by law seem to have been given. Its integrity was not questioned by any one until the answers were filed in this case. We think clearly, that, considering the whole record in the light of the presumption that property standing in the name of married persons is community property, parties and third persons dealing with it on the faith of the record are clearly estopped to question the decree, or to defeat intervening equities by suggesting that the whole estate was in fact the separate property of John Noyes, and as such subject to the restrictions of the will.

Neither can we agree with counsel's contention that the probate proceedings in this state was ancillary to the like proceedings in Montana, and that Elmira Noyes is bound by her conduct, or, as it is asserted, her election therein. The courts of this state have been vested with jurisdiction absolute over the property of decedents. Those claiming an interest in real property have no rights therein that our own laws do not give, or such as may be recognized in the absence of a statute under the doctrine of comity. The statute, Rem. & Bal. Code, § 1317, providing for the probate of foreign wills, neither extends nor limits the powers of the court. It goes only to the form and manner of proving their execution. Our courts act independently of the foreign court, and may do as they please with the property so long as they keep within the limitations of the statutory, law. 1 Woerner, American Law of Administration (2d ed.), 158.

It is assigned as error that the attorney's fee allowed by the court in the foreclosure suit is exorbitant, but inasmuch as the fee is approximately the same as fixed by the appellants' witnesses, and about one-half of the sum fixed by respondent's witnesses, we are not disposed to hold that it is unreasonable.

Decrees affirmed.

DUNBAR, C. J., ELLIS, CROW, and MORRIS, JJ., concur.